The Elgin, Joliet and Eastern Railway Company

*v.*

Mabel Raymond.

*Filed at Ottawa November 29, 1893.*

1. Negligence—*in the construction of a crossing over a railroad—a question of fact—evidence.* Where a railroad company constructs a crossing over its track in a public street, leaving a space between the rail and the sidewalk for the flanges of the car wheels, and the exact dimensions of the space thus left, in point of width and depth, are shown by the evidence, it is a question of fact for the jury to determine, in the light of all the evidence, whether the crossing is so constructed as to be reasonably safe for persons passing over the street.

2. Even if the opening between the rail and the sidewalk, in which a child caught its foot and thereby was injured, was no wider than was reasonably necessary for the proper movement by the railway company of its trains, it then became a question of fact for the jury to determine whether its unequal width and its unnecessary depth did not render it unsafe for persons passing over it in walking along the street. And the fact that a person in attempting to pass over the crossing caught his foot in the opening in such manner as to be unable to extricate it, is, of itself, some evidence that the opening was dangerous.

3. Same—*of railway company—dangerous rate of speed..* Where a count in a declaration charges a railway company with negligence in running its engine at a high and dangerous rate of speed in a populous part of a city, resulting in a personal injury to the plaintiff, but which makes no reference to an ordinance of the city on that subject, and there is evidence tending to support the charge, it will be the duty of the court to submit to the jury the question, whether, independent of the city ordinance, the rate of speed was such as, under all the circumstances, constituted negligence, and it will be error to take that question from the jury by an instruction.

4. Same—*of plaintiff in crossing a railway track.* It can not be laid down as a legal principle that a person attempting to go over a railway track where it crosses a street or highway, is bound, at his peril, to pursue a course at right angles to the track. His right is, in using a street or highway, to walk in any direction he chooses, and his duty is to exercise reasonable and ordinary care in crossing a railroad track, to avoid injury.

5. Same—*evidence tending to negative negligence of parents of child injured.* In an action against a railway company by a child, to recover

16—148 Ill.

for a personal injury inflicted while it was attempting to cross a street intersection in company with an elder sister, who was killed, both sides tried the case on the theory that the negligence of the parents of the plaintiff might be imputed to it in support of the claim of contributory negligence. The father of the plaintiff testified, without objection, that he occupied a position of night car inspector, and was in the habit of working in the night time and of sleeping in the day time. He also testified, against the objection of defendant, that at the time of the accident he had a wife and three children, viz., the plaintiff, then five and one-half years of age, a daughter seven years old, who was killed, and a son a little over two years old, and that his wife was at that time in an advanced pregnancy, and that he did not employ a servant in his house : *Held*, that there was no error in the admission of this evidence, as it merely tended to show that the plaintiff's parents were so situated as to make it impracticable for them to attend the plaintiff to and from school.

6. PRACTICE—*directing what the verdict shall be.* In an action against a railway company to recover damages for a personal injury, caused by various alleged acts of negligence, an instruction which practically withdraws from the jury the grounds of recovery alleged in several of the counts of the declaration, is erroneous, and properly refused.

7. In an action brought by a child against a railroad company, to recover for a personal injury by having its foot caught in an opening between the rail and sidewalk while attempting to cross the street, the defendant asked the court to instruct the jury, that if they believed, from the evidence, that as soon as the servants of defendant in charge of the engine discovered that the plaintiff could not get out of the way, they used all reasonable diligence to stop the engine before it struck the plaintiff, and that in addition to such efforts the bell of the engine was rung, as required by law, and that the engine at the time was not running at a greater speed than ten miles an hour, the plaintiff could not recover. There were other acts of negligence charged in the declaration than those referred to in the instruction : *Held*, that the instruction was properly refused, as taking from the jury the consideration of the other grounds of recovery relied on by the plaintiff.

8. SAME—*special finding—general verdict.* On the trial of an action based on the defendant's negligence in constructing a street crossing, in consequence of which the plaintiff caught her foot in an opening therein, the court submitted to the jury this question : "Was the plaintiff, when she got her foot caught, passing over the crossing in the usual way, and going directly across the same?" to which the jury answered, "We do not know :" *Held*, that such answer was no finding whatever, and therefore was not inconsistent with a general verdict for the plaintiff.

9. If the defendant was not satisfied with an evasive answer, it should have asked the court to have the jury sent back to their room, under proper instructions, for the purpose of agreeing upon a special finding responsive to the question put to them. If he fails to do so, he must rest content with the finding as made.

10. A special finding upon a mere evidentiary fact, whatever it may be, is not controlling, and can not be said to be, in any legal sense, inconsistent with the general verdict.

Appeal from the Appellate Court for the Second District;—heard in that court on appeal from the City Court of Aurora; the Hon. R. R. Goodwin, Judge, presiding.

Mr. Charles Wheaton, for the appellant.

Mr. C. I. McNett, and Messrs. Alschuler & Murphy, for the appellee.

Mr. Justice Bailey delivered the opinion of the Court:

This was an action on the case, brought by Mabel Raymond, an infant, by her next friend, against the Elgin, Joliet and Eastern Railway Company, to recover damages for a personal injury, received by her at the crossing of the defendant's railway over Prairie street, in the city of Aurora. The plaintiff was then a child between five and six years of age, and was returning home from school in company with her sister, who was one or two years her senior, and on reaching the crossing in question, her foot became caught in the space between the planking of the crossing and the rail of the defendant's track, and while she was held in that position and unable to extricate herself by her own exertions or those of her sister, she was run over by one of the defendant's locomotive engines which was being backed over the crossing, and one of her legs was so crushed as to require amputation just below the knee. Her sister was killed.

The declaration contains seven counts. The first two counts charge the defendant with negligence in the construction and

maintenance of the crossing of the sidewalk on the southerly side of Prairie street over the railway, the place where the plaintiff was injured, it being alleged that the space left between the planking and rail was of too great width and depth, thereby rendering the crossing unreasonably unsafe for persons passing along the street and over the railway. The first count also sets up an ordinance of the city of Aurora requiring railway companies to construct and maintain all highway and street crossings over their respective railways within the city so as to be at all times safe as to persons and property.

The third count sets up an ordinance of the city of Aurora, making it unlawful for the defendant to run its locomotive engine within the city at a greater rate of speed than ten miles an hour, and alleges that, in violation of the ordinance, the defendant wrongfully and negligently run its engine across Prairie street, within the city at a greater rate of speed than ten miles an hour, viz., at the rate of twenty-five miles an hour. The fourth count charges negligence in running the engine at an unreasonably unsafe rate of speed over the crossing in a populous part of the city and over a street very much travelled. The fifth count charges negligence in not ringing a bell or sounding a whistle on approaching the crossing, as required by statute.

The sixth count charges that the defendant's servants carelessly and negligently drove and propelled the locomotive engine, and negligently and carelessly failed and omitted to look upon or along the track ahead of the engine in the direction in which it was being propelled to see any person who might happen to be upon the track, and negligently failed and omitted to reasonably and properly attend to the business of driving and propelling the engine and to have the same under reasonable control. The seventh count charges that while the plaintiff, in the exercise of ordinary and reasonable care to avoid injury in crossing the railway, necessarily and unavoidably got her foot caught in the opening on the track, and was

making all possible efforts to extricate her foot therefrom, the servants of the defendant in charge of the engine, willfully and maliciously, drove and propelled the engine along the railway and upon the plaintiff. In each count it is charged that the negligence therein alleged caused the injury complained of.

The defendant pleaded not guilty, and at the trial the jury found the defendant guilty, and assessed the plaintiff's damages at $15,000. For that sum and costs the trial court, after denying the defendant's motion for a new trial, and its motion in arrest of judgment, gave judgment for the plaintiff. The Appellate Court on appeal, required the plaintiff to remit the sum of $5000 from her damages, and that being done, the judgment was affirmed as to the residue. The present appeal is from the judgment of affirmance.

All controverted questions of fact having been conclusively settled adversely to the defendant by the judgment of the Appellate Court, we have only to consider whether errors of law were committed by the trial court for which its judgment should have been reversed. The first point submitted is, that the special findings of the jury in relation to the construction and character of the crossing in question are unsupported by the evidence, and consequently, that the judgment, so far as it is based upon those findings, must be held to be erroneous. At the instance of the defendant, the following questions were submitted by the court to the jury, both of which were answered in the negative, viz. :

"1. Was the railroad crossing in question constructed in the usual manner of such railroad crossings, and in such manner as was reasonably necessary for the use of the railroad company?

"2. Was the said crossing reasonably safe for persons passing over the same in the usual way in going directly across the same in going along Prairie street?"

That there was evidence tending to support these findings we think can hardly be questioned. It is true several witnesses produced by the railroad company testified that the crossing was constructed in the way in which such crossings are usually constructed, and that the space left between the planking and the rail was no greater than was necessary to admit of the usual play of the flanges of the wheels of the engines and cars passing over the same. On the other hand, the exact dimensions of the space thus left, in point both of width and depth, were shown by the evidence, and it consequently became a question of fact, which the jury were required to determine for themselves, in the light of all the evidence, whether the crossing was so constructed as to be reasonably safe for persons passing over that portion of the public street.

It appears that the sidewalk, at the place where the plaintiff was injured, was about five feet in width. A witness who was present immediately after the injury, and saw the plaintiff's foot before it was extricated from the place where it was caught, testifies that he made accurate measurements of the opening. From his testimony it appears that the width of the opening between the plank and the rail at the northerly side of the walk was two and one-fourth inches, in the center where the foot was caught two and one-half inches, and at the southerly side of the walk two and three-fourths inches. Also that the space below was not filled with earth or gravel to the top of the ties, and that from the surface of the sidewalk down to the gravel was from five to five and one-half inches. The evidence also tends to show that the flanges of the wheels of the engines and cars project downward only about one and one-fourth inches.

If then it be admitted that the opening was no wider than was reasonably necessary for the proper movement by the railway company of its trains, it became a question of fact for the jury to determine whether, its unequal width and its

unnecessary depth did not render it unreasonably unsafe for persons passing over it in walking along the street. It may also be observed that the mere fact that the plaintiff, in attempting to pass over the crossing, caught her foot in the opening in such manner as to be unable to extricate it, is of itself some evidence that the opening was dangerous. At all events, it can not be said that there was no evidence tending to support these special findings of the jury, and the question as to whether they are supported by the preponderance of the evidence is not open for consideration here.

But the assignment of error upon which the greatest stress seems to be laid in this court is the one which calls in question the ruling of the trial court in refusing to give the jury the following instruction:

"The jury are instructed that, if they believe, from the evidence, that if, as soon as the servants of the defendant, who were in charge of the engine in question, discovered that, for some reason, plaintiff could not get out of the way in time, they made diligent use of all the means at their command, in order to stop the train and avoid injury to the plaintiff, then in no event can the jury find that the injury was willfully or wantonly inflicted. And if the jury further believe from the evidence that, in addition to such efforts on the part of said servants, the bell of said engine was ringing, as required by law, and that the engine, at the time of the accident, was not running at a greater rate of speed than ten miles per hour, then in no event can the plaintiff recover, and the jury should so find. And the jury are instructed that the burden of proof is upon the plaintiff to show that the bell of the engine was not thus ringing, or that the engine was running at a greater rate of speed than ten miles an hour, and she must establish the same by a preponderance of the evidence."

This instruction, as will be seen, embodies several distinct propositions, some of which, if standing alone, might perhaps have been regarded as correct. But when taken together, the

instruction is clearly erroneous, and was properly refused. One sufficient objection to it is, that it practically withdraws from the jury the grounds for a recovery alleged in the first, second, fourth and sixth counts of the declaration. It held that, if the defendant's servants did everything possible to stop their engine after discovering that the plaintiff was unable to get out of the way, and if the bell on the engine was ringing as required by the statute, and the engine was not running at a greater rate of speed than that prescribed by the ordinance, then in no event could the plaintiff recover.

It wholly ignores the ground of recovery based upon the alleged negligence of the defendant in the construction and maintenance of the crossing. Of that enough has already been said.

It also limits the consideration of the jury to the conduct of the defendant's servants after they had discovered that the plaintiff was unable to get out of the way, thus wholly ignoring the negligence alleged in the sixth count, in failing to keep an outlook along the track in the direction in which the engine was moving, to see whether persons might be thereon. The evidence shows that the engine at the time was being run backwards, and that the engineer and fireman and a brakeman were in the cab, and that the conductor and another brakeman were stationed on the tender, their duty being to to keep an outlook along the track in the direction in which the engine was moving, and to signal the engineer to stop in case any obstruction was discovered. The conductor and brakeman who were on the tender were not produced as witnesses at the trial, but the evidence of the other witnesses tends to show that, from the point where they were sitting, the place where the plaintiff was injured was in plain sight from the time they were within five hundred feet of it, but that they gave no signal to the engineer to stop until the engine reached the cattle guard on the opposite side of Prairie street, which was only about ninety feet from the plaintiff;

that they then gave a violent signal to stop, but that the engine was so near the plaintiff at that time that it was impossible to stop it in time to avoid running over her. This evidence certainly tended to prove negligence on the part of the conductor and brakeman in not keeping a proper outlook along the track and in not discovering the plaintiff in time to avoid injuring her, and the question of their negligence in that respect could not properly be excluded from the jury, as would have been done if the instruction in question had been given.

The fourth count of the declaration set up negligence in running the engine at a high and dangerous rate of speed in a populous part of the city, no reliance being placed in that count upon the provisions of the ordinance. The evidence shows that the crossing in question is in a place in the city of Aurora which is much frequented by people passing along the street, and especially by school children going to and returning from school, and while there is considerable conflict in the evidence as to the rate of speed at which the engine was running as it was approaching the crossing, there is much evidence tending to show that it was moving at the rate of twenty-five miles per hour. Whether, independent of the ordinance, the rate of speed was such as, under all the circumstances, constituted negligence, was a question presented under the fourth count, and one which it was the duty of the court to submit to the jury. As the instruction above mentioned, if given, would have substantially eliminated that question from the case, it was for that reason also properly refused.

Complaint is made of the admission, against the defendant's objection, of evidence in relation to the plaintiff's parents and family. The evidence objected to was given by the plaintiff's father, while being examined as a witness. After having testified, without objection, that he was night car inspector of the Chicago, Burlington and Quincy Railroad Company, he

being in the habit of working in the night and of sleeping in the day time, he was permitted to testify, against the defendant's objection, that at the time of the plaintiff's injury, he had a wife and three children, viz., the plaintiff, then five and one-half years of age, May, seven years, and Orrin, a little over two years old; that his wife was then in a state of pregnancy, her child being born a little less than two months after the plaintiff's injury, and that the witness did not employ a servant in his house.

Counsel on both sides seem to have tried the case on the theory that the negligence of the plaintiff's parents might be imputed to her in support of the defense of contributory negligence, and both submitted a series of instructions, which were given to the jury, based upon that theory of the law. If what thus seems to be conceded on both sides is the rule, we see nothing in the evidence objected to which was improper. It merely tended to show that neither the plaintiff's father or mother was so situated as to make it practicable for them to accompany the plaintiff to and from school, and that there was no member of the family who could accompany her except the older sister, who was with her and who was killed. The date of the subsequent birth of the witness' child was proper as tending to show how far advanced in her pregnancy the plaintiff's mother was at the date of the injury. We do not think that this testimony should have been excluded, as is claimed by counsel for the defendant, because of its tendency to evoke from the jury sympathy for the plaintiff. No fact was elicited except such as had a direct bearing upon the question of the inability of the plaintiff's parents or other adult member of the family to accompany her to and from school, and so far as it bore upon that question it was competent. The pecuniary circumstances of the family, or the dependence of the family upon the earnings of the father for their support, was not touched upon, as was the case in *City of Chicago* v. *O'Brennan,* 65 Ill. 160, cited by counsel.

It is true this court held in *Chi. C. Ry. Co.* v. *Wilcox*, 138 Ill. 370, that where a child of tender years is injured by the negligence of another, the negligence of his parents, or others standing *in loco parentis,* can not be imputed to the child, so as to support the defense of contributory negligence to his suit for damages. But as both parties, on the trial of this case, seem to have conceded that the contrary rule prevailed, and tried the case on that theory, the defendant can scarcely be permitted now to recede from that position, and assign for error the admission of testimony which that theory of the law rendered necessary and competent.

It is next urged that the third special finding of the jury is inconsistent with their general verdict. The question submitted to the jury at the instance of the defendant, and their answer thereto, constituting that finding, were as follows:

"3. Was the plaintiff, when she got her foot caught passing over that crossing in the usual way, and going directly across the same?"

"Answer. We do not know."

This can scarcely be said to be any finding whatever. It answers the question submitted neither in the affirmative nor negative. If the defendant was not satisfied with an evasive answer, it should have asked to have the jury sent back to their room, under proper instructions, for the purpose of agreeing upon a special finding which should be responsive to the question put to them. Having failed so to do, the defendant must rest content with the finding as made, and that wholly fails to establish the fact inquired about either one way or the other.

It may also be noticed that the fact submitted by the question is at most a mere evidentiary fact, and not an ultimate or controlling fact upon the decision of which the rights of the parties depended. Taking the entire question together, the inquiry seems to be, as to the precise direction in which the plaintiff was walking when she attempted to pass over the

crossing, viz., whether directly across, that is, at right angles to the track, or otherwise. Doubtless the direction in which she was walking, whether directly across the railway, or obliquely across it, or parallel with it, would furnish evidence bearing upon the question of the degree of care with which the crossing was attempted, but it would by no means be conclusive of that question. It can not be laid down as a legal principle, that a person attempting to go over a railway track where it crosses a street or highway, is bound at his peril to pursue a course at right angles to the track. His right is, in using a street or highway, to walk in any direction he pleases, and his duty is, to exercise reasonable and ordinary care, in crossing a railway track, to avoid injury. A special finding upon a mere evidentiary fact, whatever it may be, is not controlling, and can not be said to be, in any legal sense, inconsistent with the general verdict. *C. & N. W. Ry. Co.* v. *Dunleavy,* 129 Ill. 132. There is no view then in which the special finding in this case can be said to be inconsistent with the general verdict, so as to control such verdict, as provided by the third section of the statute in relation to verdicts of juries in civil cases. 3 Starr & Cur. Stat. 996.

Several other questions are raised by counsel, most of which are practically disposed of by what has already been said. Suffice it to say that we have carefully considered them all, and without further discussion, are disposed to hold that none of them are well taken.

We find no material error in the record, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*