Chicago & Eastern Illinois R. R. Co. v. Lyman M. Johnson, Adm'r Estate of Bernice A. Johnson.

1. RAILROADS—*Care in Running Trains—Absence of a Flagman at Crossing.*—Although there is no law requiring a flagman at a railroad crossing, the absence of one may be shown in connection with the amount of travel, on the question of care and caution in running trains.

C. & E. I. R. R. Co. v. Johnson.

2.  Comparative Negligence—*Error to Instruct as to.*—The doctrine of comparative negligence is no longer the law of this State (Lake Shore & M. S. Ry. Co. v. Hessions, 150 Ill. 546), and it is error to instruct a jury that the liability of the defendant depends upon that doctrine.

3.  Instructions—*Error in Taking Questions from the Jury.*—Under a declaration charging that certain things had been negligently done, an instruction which takes this question from the jury is erroneous.

4.  Same—*What Constitutes Gross Negligence.*—In instructing the jury, it is error in the court to make a declaration that a certain act is gross negligence.

5.  Same—*Directing a Verdict upon a Single Fact.*—An instruction which directs a verdict upon the proof of a single fact, where the proof of other facts is essential to a recovery, is erroneous.

6.  Same—*Damages Not to Exceed the Amount Limited by Statute.*—In an action under the statute, providing for the recovery of damages, whenever the death of a person is caused by a wrongful or negligent act, an instruction which tells the jury that they are the sole judges of the measure of damages, and are only limited by the statute, is erroneous, as tantamount to saying, if they can find such a verdict they ought to do it.

7.  Negligence—*Cars upon Side Tracks.*—Railroad companies must leave cars to be unloaded, and provide, for the demands of the public, empty cars to be loaded. Side tracks are proper places for such cars, and a company can not be held for negligence in having them there, although they, necessarily, obstruct the view of the road from some points.

Trespass on the Case.—Death from negligent act. Appeal from the Circuit Court of Iroquois County; the Hon. Charles R. Starr, Judge, presiding. Heard in this court at the May term, 1895. Reversed and remanded. Opinion filed December 10, 1895.

W. J. Calhoun, attorney for appellant; W. H. Lyford, Morris & Hooper and Kay & Kay, of counsel.

Hilscher & Goodyear and Robert Doyle, attorneys for appellee.

Mr. Presiding Justice Cartwright delivered the opinion of the Court.

This is an action by appellee as administrator of his deceased child, Bernice Johnson, to recover damages for her death resulting from injuries caused by an engine of appellant at a street crossing in Watseka, Illinois. The deceased,

who was nine years of age, was riding a pony along the street and while crossing the railroad just as an engine, which had been detached from a freight train, moved upon the crossing, the pony was struck by the engine and knocked down, the child was thrown off and both were run over. The child died the next morning from her injuries.

The acts of negligence charged were:

1. Running the engine in a defective condition without a pilot on the front to push things off the track.

2. Failure to give the statutory warning for eighty rods before reaching the crossing.

3. Allowing the view of the engine to be obstructed by cars standing on a side track.

4. Starting the engine after it had stopped without giving warning a reasonable time before starting.

5. Starting the engine too quickly and driving it with too much force over the crossing after it had been stopped. The general issue was pleaded, and on a trial there was a verdict for $4,500 on which judgment was entered.

The street ran east and west and crossed the railroad tracks at right angles. The deceased approached the crossing from the east, riding the pony on a canter, and the train, consisting of an engine and from fifty to fifty-seven freight cars came from the north, and stopped from ten to fourteen feet north of the street. The stop was only momentary, being just long enough to slack the coupling and pull the pin between the tender and first car, and the engine then started and moved upon the street and over the crossing at what the witnesses thought a rate of about three miles an hour or a fast walk. There was a box car on the side track east of the main track which stood over the sidewalk and extended into the street perhaps half its length, obstructing the view of the engine from the east until deceased was within twenty-five or thirty feet of the main track. There were other cars on the side track north of the street, and buildings along the right of way, which tended to prevent one coming from the east from seeing the train as it came toward the street. As deceased approached the

crossing she was called to by two men who warned her of the train and not to cross. They did not fix the distance from the main track alike when the warnings were given, but she could see the engine herself for twenty-five or thirty feet before reaching the main track. It was perhaps about the time when she came in view of it that she was warned. At any rate she checked the pony at about that point, but did not get control of it. Although old and ordinarily gentle it was frightened as well as its rider, and it shied to the south and ran around the front of the engine with fatal result. She was a bright and intelligent girl, strong and experienced beyond her years, and well accustomed to ride and handle the pony.

The evidence was that the statutory signal was given for eighty rods before the stop at the street by ringing the bell, and the whistle was blown several times. There were four long whistles given for opening the gate at the crossing of the Toledo, Peoria & Western Railway, which was south of the street in question.

Whether any warning was given of the starting of the engine after it had stopped was in dispute, and the evidence on that question was contradictory. The pilot or cow-catcher of the engine had been struck the day before by a train of another railroad in Chicago, and so badly broken that it had to be taken off. The shops of the defendant were in Danville, Illinois, south of Watseka, and it became necessary to take the engine there to have the pilot replaced. It was going to the shops and was being used without a pilot to haul the train of cars. Whether the condition of the engine contributed to the injury was a controverted question. The evidence for plaintiff was that a pilot would have been likely to throw the pony and child off the track, while the testimony for defendant was that it would have no such tendency when moving at a rate of speed so slow, but that they would have been rolled under it with the same result as without a pilot. It was contended by defendant that an engine must be moving at considerable speed in order that a pilot might have any

effect in throwing objects from the track, and several witnesses so testified.

The only error claimed to have occurred in the admission of evidence is in allowing plaintiff to prove the amount of travel that went over the crossing, and that there was no flagman there. The objection is that there was no issue in the pleadings on those subjects. In C. & I. R. R. Co. v. Lane, 130 Ill. 116, it was held that although there was no law requiring a flagman at a crossing, the absence of one was proper to be shown in connection with the amount of travel, on the question of the care and caution required of the railroad company in running its trains. One of the specifications in this case was starting the engine too quickly, and running with too much force over the crossing; and the evidence also showed that a box car stood partly in the street. Under the rule in that case the evidence was competent.

In giving instructions to the jury, at the instance of plaintiff, the court first gave three, defining ordinary care, slight negligence and gross negligence. The fourth, fifth and sixth followed on the subject of comparative negligence, which is no longer the law of this State. L. S. & M. S. Ry. Co. v. Hessions, 150 Ill. 546. And the fourth instruction expressly told the jury that the liability of defendant depended upon that doctrine. While it has been said that a judgment need not be reversed where an instruction on comparative negligence contains a requirement of ordinary care on the part of the person injured, and therefore amounts to a statement of the correct rule, these were rendered especially objectionable by making the liability depend upon the abolished doctrine. They should not have been given.

The seventh instruction for plaintiff was as follows:

"You are instructed by the court that if you believe, from the evidence in this case, that the injury to the deceased occurred on account of the defendant having permitted its cars on its side tracks to obstruct the view of its road, or on account of having no pilot on its engine, or on

account of running its engine at too great a speed over the crossing, or on account of starting the engine without ringing the bell or sounding the whistle a reasonable length of time before starting, and while the deceased was in the exercise of ordinary care under all circumstances in the case, then your verdict should be for the plaintiff."

It had been charged that these things had been negligently done, and by this instruction the court took that question from the jury and decided it, telling them that if either of them was done at all, they must find for the plaintiff. There was no statute requiring a pilot on an engine or fixing the rate of speed, from which the court could say that the want of a pilot or the rate of speed was negligent. There was evidence of cars standing along the side track besides the one projecting into the street, and they obstructed the view of the railroad somewhat from various points. A man was unloading coal from one of them, and, so far as appears, they were all there for proper purposes and in proper places for the legitimate business of the defendant. It must leave cars to be unloaded, and provide for the demands of the public, empty cars to be loaded. Side tracks are proper places for such cars, and defendant could not be held for negligence in having them there, although they would necessarily obstruct the view of the railroad from some points. Garland v. C. & N. W. Ry. Co., 8 Ill. App. 571; W. S. L. & P. Ry. Co. v. Hicks, 13 Ill. App. 407; C. & A. R. R. Co. v. Nelson, 59 Ill. App. 308. Aside from the car which projected into the street, no right of the public was in any way invaded by cars on the side track. The evidence, as to such other cars, was competent to show the situation as affecting the care and caution required of the respective parties, but their presence was not a ground of recovery. Yet the instruction made that fact the basis for a verdict. It was wrong, and, as to the question of negligence, it invaded the province of the jury.

Having by the third instruction defined gross negligence to be the want of slight care or an utter disregard of consequences in the performance of a given act, the court gave

the ninth instruction, bringing an act within the definition, as follows:

"You are instructed by the court, that if you believe, from the evidence in this case, that the defendants' serv‍ants started the engine standing about fourteen feet from a public highway, in the city of Watseka, without ringing the bell or sounding a whistle a reasonable time before starting, then, in that case, the court instructs you that the defendant was guilty of gross negligence. And if you further believe from the evidence in this case, that the engine was so driven across the highway, and that the deceased was thereby injured while in the exercise of ordinary care, you should find for the plaintiff, and assess his damages at such amount as the evidence warrants, not exceeding, however, $5,000."

That it was wrong for the court to make a declaration to the jury that the act was gross negligence is manifest. And it was without justification in the evidence.

The sixteenth instruction was given as follows: "The court instructs you that if you believe, from the evidence in this case, that the engine was started without ringing the bell or sounding the whistle a reasonable length of time before starting, and if you further believe, from the evidence, that the accident would not have happened had such signals been given, then you should find for the plaintiff."

This directed a verdict upon proof of a single fact, while if the act referred to was negligent, the law would still add the requirement of proof that the injured party was in the exercise of ordinary care. Whether the deceased did exercise such care in approaching the crossing was a disputed question, and it was a serious error to give an instruction taking it from the jury.

There were several instructions on the question of damages. Among them was the eighth, by which the jury were told that they were the sole judges of the measure of damages and were only limited in the amount by the statute. Their attention was then called to matters affecting the damages, and the instruction concluded with the statement

C. & E. I. R. R. Co. v. Johnson.

that if, from all the evidence and circumstances in the case as proven, they considered the damage to be the full amount set forth in the statute, of $5,000, they should so find by their verdict. It amounted to saying that, if they could find such a verdict, they ought to do it. Of similar character was the eleventh, which was as follows:

" On the part of the plaintiff you are instructed that in this kind of a case it is not necessary that there should be any proof of actual services of pecuniary value rendered to next of kin; nor that any witness should express an opinion as to the value of such services. And when the deceased is a minor and leaves a father and mother entitled to her services, the law presumes a pecuniary loss to them; and the damages in such case can be greatly increased by proof of the personal character of the deceased; and if you believe, from the evidence in this case, that the deceased was a child of more than ordinary ability in intellect and had a strong physical system, and was of a careful and saving disposition and loved her parents and brother, such facts, if proven in evidence, are proper to be considered in determining the amount of damages; and if, from all the evidence, you believe a damage has been sustained to the amount of $5,000, you should so find, as the matter is solely with you, to be governed by the evidence and circumstances in the case."

These instructions were pursuasive arguments by the court for a verdict of $5,000, with the statement in each that the jury were the sole judges of that question. They emphasized the fact that the only limitation on the jury was the statutory one. The jury were told that they could come up to the limit if they saw fit to do so, and they were invited to do it. The instructions were far more objectionable than the one condemned in C., R. I. & P. R. R. Co. v. Austin, 69 Ill. 426. It is replied that they were not effective in procuring a verdict for $5,000, and, as the suggestions were not adopted, no harm came from them. But while they did not secure all that was asked for, they came very near it, and it is not presumed that the jury would have estimated the mere pecuniary loss at the amount of the verdict unless influenced by them.

There were proper instructions on the part of the defendant, but the errors in those given for plaintiff were not of a nature to be·cured by others. The judgment must be reversed and the cause submitted to another jury, and it is reversed and the cause remanded accordingly.