## Clara Overtoom, Adm'x, v. Chicago & E. I. R. R. Co.

1. RAILROAD COMPANIES—*Operation of Trains Over Street Crossings in Cities.*—The degree of diligence required of a railroad company in the operation and running of its trains over street crossings, especially in and about busy cities, depends upon the circumstances of each case, and whenever it is alleged that a crossing is in a populous neighborhood and much used, evidence tending to support such allegation is proper and competent. And this is true at common law, independently of statutes or ordinances regulating the rate of speed of trains.

2. JUDICIAL NOTICE.—*Matters to be Proved.*—Courts and juries are not presumed to know judicially the varying characteristics and conditions of the numerous intersections of streets and railway tracks in and around a large city, and evidence of such condition is proper and competent as tending to shed light upon the care and caution to be exercised by a railroad company in running its trains.

3. EVIDENCE—*Speed of Trains.*—The fact that a witness is not able to testify how fast or how slow a train was running should not preclude him from testifying whether the train was running fast or slow. While such evidence is competent, its weight is for the jury.

4. SAME—*Competency of Shorthand Notes.*—The notes of a stenographer taken at a coroner's inquest are not admissible as the best evidence of what occurred at such inquest.

5. SAME—*Testimony Taken before a Coroner.*—The deposition of the witness taken by a coroner and reduced to writing by him, and filed as provided by statute, is the best evidence of what a witness testified to upon an inquest held under the statute by such coroner.

**Trespass on the Case.**—Death from negligent act. Trial in the Superior Court of Cook County; the Hon. JOHN BARTON PAYNE, Judge, presiding. Verdict and judgment for defendant; appeal by plaintiff. Heard in the Branch Appellate Court at the October term, 1898. Affirmed. Opinion filed March 14, 1899.

CHESTER FIREBAUGH, attorney for appellant.

WILL H. LYFORD, J. B. MANN and ALBERT M. CROSS, attorneys for appellee.

MR. JUSTICE SHEPARD delivered the opinion of the court.

Appellant sued as administratrix of the estate of Adrian Overtoom, deceased, to recover damages for the alleged wrongful killing of the said deceased.

The accident happened about dusk, in the evening of April 20, 1895, at the intersection of Michigan avenue with appellee's tracks, between 115th street and 116th street, near Kensington station, in the city of Chicago.

At that point there were three tracks running in a southeasterly and northwesterly direction, and Michigan avenue, being a north and south street, was crossed by the tracks diagonally.

The easternmost (or northernmost) track was a side track, the middle track was the main south-bound track, and the westernmost (or southernmost) track was the main track for north-bound trains. The business center of Chicago being far to the north of the place in question, most of the witnesses speak of the tracks as running north and south, although in fact it is Michigan avenue, and not the tracks, that pursues that course.

The home of the deceased was north of the tracks, on 115th street near Michigan avenue. After supper he left his house and went south on Michigan avenue. When he reached the crossing, a long and heavily loaded freight, or coal train, moving slowly, was either passing upon the crossing, or about to pass from the southeast, upon the north-bound track. He entered upon the crossing, passed over the side track and got upon the middle or south-bound track, when another train, consisting of a locomotive and caboose, came down from the north, upon the south-bound track, and struck and killed him.

From the testimony of the only witnesses who saw the deceased at about the instant he was hit, it is not clear whether the freight train was upon the crossing when he entered upon it, and prevented him from going across, and that he stopped and was standing still upon the south-bound track waiting for the freight train to pass upon the north-bound track, or was walking diagonally across the south-bound track, upon which he was hit, looking backwards at the freight train approaching from the other direction upon the north-bound track.

Bisping, a witness for the plaintiff, testified he saw the

train strike him; that "he stood right on the track; &ast; &ast; &ast; he was standing on the track waiting for the freight train to pass."

Fairman, for the defendant, testified that he was the locomotive engineer running the engine that struck the deceased; that he was about seventy-five feet from Overtoom when he first saw him; that he was " coming from the east sidewalk, walking in a diagonal course across the street. He was looking eastward when we approached the crossing, at a train coming up the grade from the south."

Brown, a telegraph operator in appellee's employ, testified for appellee : " The engines met at the crossing. &ast; &ast; &ast; Saw him a few seconds before he was struck; &ast; &ast; &ast; he passed under the arm of the gate across the sidewalk. He was struck by the train from the north. I saw him struck. The north-bound train was then about the crossing." The evidence as to whether the gates were up or down, when deceased passed upon the tracks, was conflicting. . There was evidence enough for the jury to find either way upon.

The pleas were, simply, the general issue of not guilty. The killing of the deceased was admitted by the appellee at the trial, so that the issues submitted to the jury were confined to the questions of negligence by appellee and contributory negligence by the deceased.

Both of these questions were settled by the verdict of not guilty in favor of appellee, upon conflicting evidence, and if appellant had a fair trial, and there are no errors of law of sufficient magnitude to require a reversal of the judgment, it must stand.

It is urged that the court erred in excluding certain evidence offered by the appellant.

The first count of the declaration charged the negligence of the appellee to consist in running its engine and train of cars over the crossing in question at an unusual and unreasonably fast and unsafe rate of speed, said crossing being then and there in a very thickly settled and populous part of the city, and being then and there very much traveled.

The appellant testified that she had resided with the de-

ceased, her husband, in the same house, about a block and a half from the crossing, for about thirteen years, and was acquainted with the region and the crossing. Upon her direct examination she was asked to state whether or not Michigan avenue was a much traveled highway at that time, and a general objection to the question was sustained.

After some colloquy between the court and counsel for appellant, wherein the latter contended that it was competent to show, and that he wished to show, that the neighborhood was populous, and many people were going along the avenue all the time, the court ruled it was " wholly immaterial whether there were forty or one. It was a public highway, and everybody had a right to be on it that wanted to ," and refused to allow the evidence to be given.

Later, upon her re-direct examination, a like attempt by a similar question was made, and an objection to the question, upon the ground of immateriality, was sustained—the judge saying in a continuous remark, shown in the bill of exceptions as follows, " I think it is wholly immaterial, but if counsel think it important, I will let him prove it. Objection sustained."

From the context it is plain, we think, that although the court did say that appellant might prove what he was attempting, the court immediately changed back to its earlier holding, and denied opportunity to appellant to make the proof. This is made more apparent by subsequent rulings by the court in sustaining general objections to three like questions put to three other witnesses, one upon direct examination and two upon re-direct examination.

As to the rulings upon the questions put to the two witnesses upon their re-direct examination, it is said by appellee that the rulings were proper, because of the rule of evidence that the re-direct examination of a witness must be confined to matters brought out on cross-examination. But that rule is one that does not execute itself. It is required that the objection should be made upon that ground. Here, the objections were mere general ones.

It is further insisted by appellee that evidence on the point was really put into the case because a witness who

was questioned concerning the populousness of the region was allowed to state that "right by the crossing there are not many people living, but all around there are. Within a block away it is pretty thickly settled, and was so in the month of April, 1895."

Which answer, being made after his testimony that "there was a good deal of travel on Michigan avenue," was, upon motion by appellee, struck out.

It appears from the evidence that appellee maintained gates at the crossing, and there was a conflict in the evidence as to whether the gates were up or down at the time the deceased entered upon the tracks. There was also a conflict in the evidence as to the rate of speed at which the train that struck and killed the deceased was running at the time he was hit.

In some of the counts of the declaration, negligence in the omission to properly operate the gates, and in the rate of speed at which the train was run, were alleged, and various rulings of the court concerning evidence offered in support thereof are complained of.

These rulings last referred to, may be properly considered in connection with the ones previously mentioned concerning the offered proof of the populousness of the neighborhood and the amount of travel over the crossing.

The degree of diligence required of a railroad company in the operation and running of its trains over street crossings, especially in and about busy cities, depends upon the circumstances of each case, and whenever it is alleged that the crossing is in a populous neighborhood and much used, evidence tending to support such allegations is proper and competent. And this is true at common law, independently of statutes or ordinances regulating the rate of speed of trains. Such regulations are usually prohibitory of a rate of speed greater than that which is prescribed, but are not permissive of such a rate under all circumstances. The safety of the public may frequently require trains to run at less speed than the statute or ordinances prohibits the excess of. Neither courts nor juries are presumed to know judicially of the varying characteristics in such respects of the

numerous intersections of streets and railway tracks in and around a large city. Proof thereof is therefore necessary, and, because necessary, is proper and competent under appropriate allegations. The tendency of such proof is to shed light upon the question of the care and caution exercised by the railroad company in running the train that caused the injury.

These views are supported by numerous decisions, among which are Wabash R. R. Co. v. Hanks, 91 Ill. 406; C. & N. W. Ry. Co. v. Dunleavy, 129 Ill. 132; C. & I. R. Co. v. Lane, 130 Ill. 116; E. J. & E. Ry. Co. v. Raymond, 148 Ill. 241; St. L., A. & T. H. R. R. Co. v. Odum, 52 Ill. App. 519; C. & E. I. R. R. Co. v. Johnson, 61 Ill. App. 464.

Two of appellant's witnesses were asked whether the train was going fast or slow, and the answers that " it was going very fast," by one, and, "running pretty fast," by the other, were, upon motion, struck out.

We infer from the briefs that this ruling was made upon the mistaken notion that because the witnesses were inexperienced in observing the speed of trains, and could not state, in miles per hour, the rate at which the train was going, they were incompetent to testify whether the train in question was going slow or fast.

It was held, in I. C. R. R. Co. v. Ashline, 171 Ill. 313, as follows :

" The fact that a witness might not be able to testify how fast or how slow a train was running should not preclude him from testifying whether the train was running fast or slow. While such evidence would be competent, what weight should be attached to it would be for the jury."

But we can not regard the error in striking out the answers as harmful. The witness whose answer, upon direct examination, that the train was " running pretty fast," was struck out, testified, upon cross-examination, that the train " was coming just a-flying through there," and another witness testified, without objection, that the train " was going very fast," and several testified to a high rate of speed, in specified miles per hour.

Nor do we regard it as serious error that the court refused

to allow another witness to testify as to the height of a trolley wire from the ground, it having been testified that the deceased was thrown into the air as high as a trolley wire on the street car line at that point.

While such evidence might have tended to show that the train was moving at a high rate of speed, it would have been merely cumulative on the point of speed, and probably the jury were not ignorant of the usual height of trolley wires.

For the purpose of impeaching one of appellant's witnesses upon the subject of the position and operation of the gates, appellee produced as a witness a stenographer in appellee's service, who took down shorthand notes of the testimony given at the coroner's inquest, over the body of the deceased, and read to the jury from such notes, over the objection of appellant that such was incompetent and not the best evidence, certain questions put to the witness at the inquest, and his answers thereto. The only foundation for this evidence, and the only method of qualifying this witness, or of showing the authenticity of the notes he read from, was, as shown by the abstract, as follows:

"Am in the law department of the Chicago & Eastern Illinois Railroad. Have been there for two and one-half years. Have worked at phonography, taking shorthand notes about five years. Was present at the coroner's inquest which was held over the body of Overtoom at Kensington, April 23, 1895, and took down shorthand notes of the testimony given there. I have the notes of the testimony here with me.

Q. Will you produce them?

(Witness produces note book.)"

Upon cross-examination this witness testified:

"I can not say that I have an independent recollection of what occurred at the inquest, that is, independent of my notes."

The witness nowhere says that the notes are correct, nor even that they are in the same condition as they were left in by him at the close of the inquest.

We are unable to conceive of any ground upon which the admissibility of the notes can rest. The trial judge justified

his ruling by the following remark: "My impression is that this is much better than testifying from memory."

Counsel for appellee gives a more specious reason for upholding the ruling, in that it is proper to show a witness has made statements out of court different from those made in court, and that this may he shown by the evidence of any person who heard the statements made elsewhere. But this reason has no applicability, because the witness did not pretend to testify from recollection. He merely read from notes made by him in a book produced by him, without any recollection independent of the notes, and with nothing to show that the notes correctly and truly expressed what occurred at the inquest. It was not the testimony of a witness that he had heard the other at another time make a different statement, that was admitted, but it was merely some unauthenticated notes of what the earlier statement was that was admitted.

There is still a broader ground why the contents of the notes were inadmissible, and that is because the deposition of the witness taken by the coroner and reduced to writing by him, and filed as provided by the statute, was the best evidence. For a discussion of this subject, see United States Life Ins. Co. v. Vocke, 129 Ill. 557, and People v. Devine, 44 Cal. 452, quoted from on page 566.

Some flippant remarks by the trial judge, in the presence of the jury, are complained of as prejudicial, but we do not think they were effective upon the result.

In the matter of instructions we find no substantial error.

Although there was error in the rulings in the respects indicated, the majority of the court are of opinion that such errors are applicable to and affect only the question of the negligence of the appellee, and in no substantial manner touch the question of contributory negligence by the deceased; that under the rule that every intendment must be given in favor of the verdict of a jury upon conflicting evidence, we must presume that the jury found the deceased was guilty of contributory negligence, and especially so where, as here, there was so much evidence which, with the

legitimate inferences to be drawn therefrom, tended to show that had the deceased been in the exercise of ordinary care for his own safety, he would not have come to his death. The judgment of the Superior Court will be affirmed.