## Chicago & Alton Railway Company v. Hugh C. Wilson, Administrator.

### Gen. No. 4,580.

1. ORDINANCES—*how irregularities in adoption of, may be explained.* Where the journal kept by the clerk of the city council contains irregularities and discrepancies with respect to the mode, manner and time of the adoption of ordinances, parol evidence is competent to aid such journal and the recitals thereof.

2. ERRORS—*not shown by abstract will not be considered.* Where the abstract does not show the ruling of the court upon objections urged and an exception to such ruling, the alleged errors predicated thereon will not be considered on review.

3. HABITS OF CARE—*when competent in action for death caused by alleged wrongful act.* Proof of the careful habits and sobriety of the deceased is competent in an action for death caused by alleged wrongful act where no one saw the accident which resulted in death.

4. CONTRIBUTORY NEGLIGENCE—*what competent upon question as to whether deceased was in exercise of, when attempting to cross railroad tracks.* One attempting to cross railroad tracks in the face of an approaching train is justified in assuming that such train will not run at a greater rate of speed than that permitted by ordinance in force at the place of the accident.

5. JUDGMENT—*when not excessive.* A judgment for $2,500 in an action for death caused by alleged wrongful act is not excessive where it appears that the deceased was a woman, fifty-nine years of age, who left her surviving a husband and five children, as her heirs at law and next of kin, for whom she was accustomed to keep house and serving by way of house cleaning, washing, etc., receiving by way of compensation for other outside work one dollar per day and averaging in her earnings about $1.50 per week.

Action on the case for death caused by alleged wrongful act. Appeal from the Circuit Court of Grundy county; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in this court at the October term, 1905. Affirmed. Opinion filed July 17, 1906.

J. L. O'DONNELL and T. F. DONOVAN, for appellant; WINSTON, PAYNE & STRAWN, of counsel.

CHARLES F. HANSON and BROWNE & WILEY, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

The main line of the Chicago & Alton Railway Company passes through the village of Braceville in a northeasterly and southwesterly direction. Main street in said village west of said railroad runs east and west, but as it comes within about one hundred feet of the right of way on the west, it turns southeast and crosses the right of way at right angles, and continues in that direction. The village contains 1,200 or 1,500 inhabitants, and has but two streets which cross the railroad. Mrs. Annie Wilson lived on Main street on the south side of the railroad. On the evening of October 24, 1903, she left her home and went about two blocks west of the railroad and bought groceries and meat, and was seen returning home on the north side of Main street carrying her bundles, just before a fast passenger train from the northeast passed southwesterly without stopping. She did not return to her home. She made a business of working for other people, house cleaning, nursing in sickness and the like, and at the time was frequently in attendance on a certain sick woman. When she did not return her husband concluded she was staying with some one who was sick. Some boys that evening found packages along the track. Next morning her dead body was found on the southeast side of the crossing about twenty feet from the nearest rail and seventy-five feet from the crossing. Her administrator brought this suit to recover for the loss to her next of kin. The declaration charged her death to the high and dangerous rate of speed at which defendant drove the train over that crossing; to the failure to give the signals required by statute; and to the violation of an ordinance of said village limiting the speed of passenger trains within the corporate limits to ten miles per hour. There was a plea of not guilty, a jury trial, a verdict for plaintiff for $3,000, a *remittitur* by plaint-

iff of $500 and a judgment for plaintiff for $2,500; and this is an appeal by defendant from said judgment. It is argued that the court erred in admitting in evidence the ordinance, and certain photographs, and proof of the careful habits of deceased; that the proof shows deceased was guilty of contributory negligence which should bar a recovery; and that the damages are excessive.

1. Plaintiff offered in evidence a printed book, which purported to be the revised ordinances of the village of Braceville and which purported on its title page to be printed and published by authority of the president and board of trustees of the village of Braceville; and especially offered said title page, the preliminary ordinance, the certificate of the clerk at the end of the volume, and section 2 of chapter 30, entitled "Railroads," which limited the speed of a passenger train within the corporate limits to ten miles per hour. The preliminary ordinance was as follows:

"Laws and ordinances of the village of Braceville. Be it ordained by the president and board of trustees of the village of Braceville:

"Section 1. That the laws and ordinances governing the village of Braceville, as revised and arranged in sections and chapters by Thomas F. Clover, attorney at law, and passed by the board of trustees, on the 4th day of February, A. D. 1885, and approved by the president of the board of trustees, on the 4th day of February, A. D. 1885, be and the same are hereby ordered printed in book form, to be entitled, 'Revised Ordinances of the village of Braceville.'

"Sec. 2. This ordinance shall be in force from and after its passage.

"Passed and approved February 4th, A. D. 1885.

"Isaac Wilcoxon, President of the Board of Trustees.

"Attest: Thomas Jack, Village Clerk."

At the close of the ordinances were these words: "Passed and approved February 4th, 1885. Isaac Wilcoxon, President. (Seal of the Village of Braceville.) Attest: Thomas Jack, Village Clerk." After this came the following certificate: "State of Illinois, Grundy County, Village of Braceville. SS. I, Thomas Jack, Village Clerk of the Village of Braceville, do hereby certify that the foregoing ordinances, as revised by Thomas F. Clover, were adopted by the Board of Trustees of the Village of Braceville on the 4th day of February, 1885, and that the original copy of said ordinances is on file in my office in said village. Witness my hand and the seal of the said village this 4th day of February, 1885. Thomas Jack, Village Clerk. (Village Seal.)"

Section 4 of article five of the general act for the incorporation of cities and villages enacts as follows in regard to proof of ordinances: "All ordinances and the date of publication thereof, may be proven by the certificate of the clerk, under the seal of the corporation. And when printed in book or pamphlet form, and purporting to be published by authority of the board of trustees or the city council, the same need not be otherwise published; and such book or pamphlet shall be received as evidence of the passage and legal publication of such ordinances, as of the dates mentioned in such book or pamphlet, in all courts and places without further proof."

The book here offered in evidence complied with the above statute. It is strongly argued here by plaintiff that the legislature intended by the foregoing statute to make such book of ordinances so printed and published conclusive proof both of the passage and of the legal publication of the ordinances. But we do not need to decide that question. The trial court held it was *prima facie* proof thereof. The jury was then withdrawn, and defendant offered proof to identify the journal of the council proceedings, and then

offered that book in evidence and especially pages
278 to 286, inclusive, showing proceedings at meet-
ings of the village trustees on February 2 and Febru-
ary 9, 1885, from which it is claimed that no meeting
was held on February 4, 1885; that the revised ordi-
nances were adopted on February 2, 1885; and that
chapter 30 thereof as adopted was upon the subject of
rules, and not of railroads.   The journal shows a
meeting of the village board convened on February 2,
1885, for the purpose of considering the revised ordi-
nances; that all the members were present; and that
a motion was carried to take up and adopt the ordi-
nances chapter by chapter.   The journal then gives.
the number of each chapter, beginning with chapter
one, and in most cases enumerates the number of each
section in that chapter.   It gives the yeas and nays
upon the adoption of each chapter, and shows each
chapter adopted.   In a few cases. the number of sec-
tions in a chapter is not given.   After the adoption of
chapter one an adjournment to one o'clock is shown.
There is no reference in this journal to chapter 15, but
chapter 16 follows immediately after chapter 14, and
the enumeration then proceeds in due order.   This
makes the last chapter adopted chapter 39, whereas
there are but chapters 1 to 38 inclusive in the pub-
lished book.   Still there are only 38 chapters shown
as adopted in the journal.   The only case in which the
journal shows the subject of the chapter is chapter 30,
which the journal shows related to "Rules," while in
the printed book chapter 30 relates to "Railroads"
and chapter 31 to "Rules."   The number of sections
in a chapter bearing a given number as stated in the
journal does not always agree with the number of sec-
tions in the chapter bearing that number in the printed
book.   The error in omitting to number one chapter as
chapter 15 in the journal does not explain all the ap-
parent discrepancies.   At the close of the proceedings
is an unanimous vote in favor of the report of the

committee, which, we take it, means an adoption of the ordinances as an entirety. Plaintiff called E. L. Clover, a lawyer, and proved by him that he is a brother of Thomas F. Clover, named in said preliminary ordinance as the one who had prepared the revision, and that said Thomas is ill in California; that the witness was present with his brother during all the time the village board was discussing and adopting said revised ordinances; that each chapter was read and voted upon and adopted by the call of the yeas and nays; that each chapter of the book as published was read and was adopted upon the call of the yeas and nays; and that the session lasted either three or four days. Part of this testimony was no doubt incompetent, but it was introduced in the absence of the jury, and without any ruling that it was competent; and we think plaintiff could properly show that though the session began on February 2 it lasted till February 4, and thus explain how it came that, as shown by the certificates to the printed ordinances, they appear as passed and approved February 4. It shows that the clerk in writing the journal treated the sessions devoted to the revised ordinances as all embraced in one legislative day, as is occasionally done in Congress and other legislative bodies. The one adjournment till one o'clock which the clerk noted may have been till one o'clock the next day, or February 3, and he failed to make any note of the adjournment from that day to February 4.

In our judgment this proof does not overcome the published book of ordinances. To defeat the case made by the introduction of that book and its title page and certificate, it was necessary to show that the ordinance was not adopted by the village board. This journal shows that a set of revised ordinances containing thirty-eight chapters was adopted. It shows that the clerk made at least one error in giving the number of a chapter, and continued that error through

the chapters which followed, and it leaves a suspicion and perhaps a probability that when it comes to printing them some changes may have been made in the order of some of the chapters, and consequently in their number. But that would not show that these revised ordinances were not adopted, or that chapter 30 of the printed volume, relating to railroads, was not adopted. But, further, the village clerk whom defendant called to produce this journal, had only been in office a little over a year. His testimony, when all considered, is only that this journal is the only record book of the proceedings of the village board for the year 1885 that he knew about, but that he had other books, though not of that kind. Section 11 of Article 6 of the City and Village Act is as follows: "The clerk shall record, in a book to be kept for that purpose, all ordinances passed by the city council or board of trustees, and at the foot of the record of each ordinance so recorded shall make a memorandum of the date of the passage and of the publication or posting of such ordinance, which record and memorandum, or a certified copy thereof, shall be *prima facie* evidence of the passage and legal publication or posting of such ordinances for all purposes whatsoever." There is nothing to show that the then clerk of the village of Braceville did not perform that duty and so record these ordinances. If so, it would be as much a record of the city as is this journal, and as competent proof of their passage. Defendant therefore did not show that there was in the clerk's office no proof of the passage of the revised ordinances, and of chapter 30 thereof, on February 4, 1885. Section 2 of chapter 30 of said ordinances was properly admitted in evidence.

2. The abstract does not show any error in relation to the admission of the photographs. It shows that they were offered, and that defendant made certain objections. It does not show what ruling the court made upon said objections, nor that defendant ex-

cepted thereto. Errors not shown by the abstract will not be considered. But upon turning to the record we find defendant did not except to the admission of the photographs. All the record shows on that subject is that the court said: "I think I will give the defendant the benefit of an exception and let it go in." But defendant did not avail of that offer, and the remark of the court could not create an exception in favor of defendant. But, further, the offer of these photographs was preceded by testimony by Hugh Wilson, the plaintiff, as to their correctness as a representation of the locality as it was at the time of his wife's death, and explaining the very slight difference in one photograph, and all that testimony by Wilson is omitted from the abstract. That omission precludes the consideration of the objection. Defendant cannot be permitted to omit from the abstract the evidence laying a foundation for this proof, and then be heard to argue that the foundation was insufficient to support the ruling. The abstract shows no basis for disturbing the judgment because of the admission of the photographs.

3. Proof was made by plaintiff of the careful habits and sobriety of deceased. Such proof is competent where no one sees the accident which results in death. I. C. R. R. Co. v. Nowicki, 148 Ill. 29; C., B. & Q. R. R. Co. v. Gunderson, 174 Ill. 495; Dallemand v. Saafeldt, 175 Ill. 310; I. C. R. R. Co. v. Prickett, 210 Ill. 140. Plaintiff's proofs did not disclose that any one saw the accident. When testimony of this character was first offered defendant objected on the ground that such evidence was only competent where nobody witnesses the accident. The attorney who made that objection was then asked if he claimed there was an eye-witness of this accident, and he made no reply. This is omitted from the abstract. It was after that silence that the court admitted the testimony. There was certainly no error in its admission under those

circumstances. When defendant introduced its proofs it called the engineer, and he testified that he saw deceased just before she was struck; that she appeared to have time to get over ahead of his train; and that he did not stop and did not know she was struck till next day. ' If the introduction of that proof by the defense had any tendency to render incompetent plaintiff's proof relative to the careful habits of deceased, a motion should then have been made to exclude it, or the matter should in some way have been brought to the court's attention, and a ruling asked in view of the change in the proofs. That was not done. Under plaintiff's proofs, it was properly admitted, and its exclusion was not afterwards asked.

4. Was deceased guilty of contributory negligence? This was a question of fact, and we cannot repeat all the proofs bearing upon that subject. As deceased came near the crossing there were on the northwest side of the tracks between her and the approaching train two large trees, two houses, one less than 48 feet from the nearest rail of the said track and the other less than 56 feet therefrom (as to the situation of which houses the abstract is very misleading), and these houses were surrounded by trees, there was a beer depot distant less than six feet from the nearest rail, and there was a large clay hill much higher than the train and about one hundred feet wide according to the scale on the plat and perhaps ten feet from the side track. The side track, which was northwest of the main track, was four feet and eight inches between its rails, and the distance from its south rail to the nearest rail of the main track was eight feet and two inches. Two box freight cars stood upon the side track about ninety feet northeast of Main street. The engineer testified that he saw deceased when he was opposite the clay hill, (which was about six hundred feet from Main street), and that he then whistled; and the fireman corroborated this proof as to the whistling to some extent. Witnesses for plaintiff testified that the

only whistling was when the engine was about at the depot, which was southwest of Main street and after the engine struck deceased. Deceased was entirely familiar with that crossing. The engine had a powerful electric head light. The engineer testified that deceased looked towards him when he was at the clay bank, hesitated, stepped back a little, and then went on across the track and that he supposed she had plenty of time to cross, and thought no more about it till he heard next day of her death. From all his evidence we conclude it was after she crossed the side track and had got beyond the line of the box cars that she turned her face towards the approaching train, hesitated and then went on. In passing upon the question whether deceased was negligent in proceeding we must consider that she had a right to expect the train to run at not exceeding ten miles per hour (B. & O. S. W. Ry. v. Then, 159 Ill. 535; C., B. & Q. R. R. Co. v. Gunderson, *supra*), and if it had been restricted to that speed from the time she saw it she would not have been struck, and also, that if the engineer, who knew of the speed of the train, felt so sure she had time to cross that he did not even look on the other side to see if she did get across, surely deceased might well have entertained the same belief, when she knew nothing of the great speed of the train. The fact that other people several blocks away saw or heard this train or saw the reflection of its headlight on the sky, has little bearing upon the question whether deceased should have seen it through these trees, houses, freight cars, beer house and clay hill. In view of all the circumstances we have stated, and other facts appearing in evidence, we conclude that the proof is such that a verdict either way upon the question whether Mrs. Wilson was exercising due care for her own safety, approved by the trial judge, could not be disturbed in this court upon the ground that the jury ought to have found the other way.

5. Are the damages excessive? Mrs. Wilson was fifty-nine years old, and left a husband and five children, all grown up. She and her husband occupied part of a house, and a married son and his wife the other part. She was accustomed to do the housework and sewing for herself and husband, and then she went out working at house cleaning, washing, taking care of women in confinement, nursing in sickness, and the like. She had been doing this for sixteen years. She received therefor about $1 per day, and on cross-examination her husband testified she averaged $1.50 per week anyway. She sometimes went out three or four days in a week, sometimes the whole week, and sometimes she did not go out at all. Her wages supported herself and her husband, who was sixty-eight years of age. We know of no scale by which the pecuniary value to her husband of the continuation of this woman's life can be precisely estimated. A recovery might properly embrace not only what he would receive from her earnings, but also the value of her services to him in the household. Perhaps we should not have estimated the mere pecuniary loss resulting to him from her death as high as the jury did, but we find nothing in the verdict to warrant us in saying that it indicates that the jury were swayed by passion or prejudice, and we do not feel warranted in disturbing the judgment for $2,500.

6. The train went through the village at a speed of from 50 to 60 miles per hour. If the jury had found specially that it was negligence to run at that speed through a village of that size, with only two places where the streets crossed the railroad, that conclusion could not have been disturbed under the proofs in this case, and that proof warranted a verdict under the first count. C. & N. W. Ry. Co. v. Dunleavy, 129 Ill. 132; E. J. & E. Ry. Co. v. Raymond, 148 Ill. 241. But there was an ordinance limiting the speed, and this train was run at a speed five or six times as great as the law permitted. This violation of the ordinance

was negligence and authorized a recovery under the third and fourth counts. C., C., C. & St. L. Ry. Co. v. Baddeley, 150 Ill. 328; C. & E. I. R. R. Co. v Mochell, 193 Ill. 208.

The judgment will be affirmed.

*Affirmed.*