REUBEN B. POLLARD

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

1. HEARSAY EVIDENCE—*to prove indebtedness and insolvency.* On the trial of one for perjury, on his examination touching his sufficiency as bail in testifying that he was worth thirty-five or forty thousand dollars, over and above all just debts and liabilities, the court permitted a witness for the prosecution to give mere hearsay evidence in respect to large amounts of supposed indebtedness against the accused; that he was insolvent, and that there was an incumbrance upon a lot of hay owned by him, which he had testified was unincumbered: *Held*, that the admission of this testimony was erroneous.

2. EVIDENCE—*admission of improper, when a ground of reversal.* Where the court can see, from the whole case, that the admission of incompetent evidence could not have prejudiced the party against whom it was given, the error may be disregarded; but if it was likely to have worked prejudicially to him, it can not be disregarded.

3. PERJURY—*indictment must show the materiality of the matter sworn to.* It is a well settled rule that it must appear on the face of the facts

---

set forth in the indictment, that the matter sworn to and upon which the perjury is assigned, was material, or there must be an express averment to that effect. The materiality of the matter sworn to must depend upon the state of the cause and the nature of the issue in question.

4. SAME—*materiality of testimony as to party's ability as bail.* On the examination of a party as to his qualification to become bail for a party, under indictment, in the sum of $3,000, the material point of inquiry is, not whether such person is worth $40,000, but whether he is fully able to discharge the obligation he proposes to assume. If that sum, with interest and costs, can readily be made out of his property, it is wholly immaterial whether he is worth ten times that amount, and if his testimony in the latter respect is false, perjury can not be assigned upon it.

5. So, if such party, on his examination as to his sufficiency for bail, stated that he owned 400 tons of hay, which proved to be true, and that it was situated in a certain village and was worth $8 per ton, it is not material if the hay was not situated in the village, but just outside of it, and, therefore, he can not be convicted of perjury, if he in fact did own the hay, and it was worth about what he testified to, its precise location not being material.

6. SAME—*effect of the false testimony is immaterial.* It is the act of false swearing, in respect to a matter material to the point of inquiry, which constitutes the crime of perjury, and not the injury which it may have done to individuals, or the degree of credit which was given to the testimony. The fact that the testimony, alleged to be false, caused the court to accept the party as bail, will not supply or constitute an equivalent for a want of materiality in the testimony charged to be false.

7. WITNESS—*credibility of, instruction respecting.* On the trial of one for perjury, the court instructed the jury, "that if they believe from the evidence that any of the witnesses, who have testified for the defense, have sworn falsely on any material fact in issue, then they have the right to disregard their testimony, unless corroborated by other credible evidence in the case:" *Held,* that the instruction was clearly wrong, it omitting the essential element that the witnesses had wilfully and knowingly sworn falsely.

WRIT OF ERROR to the Circuit Court of Kane county; the Hon. SILVANUS WILCOX, Judge, presiding.

Mr. T. C. MOORE, for the plaintiff in error.

Mr. JAMES K. EDSALL, Attorney General, for the People.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

This was an indictment for perjury, returned to the Court of Common Pleas of the city of Aurora, and the venue changed to the circuit court of Kane county, where a trial was had, terminating in the conviction of the plaintiff in error by the jury. A motion for a new trial was made and overruled, and the accused sentenced to imprisonment in the penitentiary for one year. . He brings the record to this court by writ of error, and assigns various errors.

The oath upon which perjury is assigned, was upon the examination of the accused, in open court, touching his qualifications to become bail for one Clay, who was under indictment for forgery, and whose bail had been fixed by the court at $3000. The perjury assigned in the first count of the indictment is, that Polland did then and there feloniously, wilfully, falsely, corruptly and knowingly testify and swear, among other things, in substance and to the effect following, that is to say : "that he, the said Reuben B. Pollard, at the time of taking said oath, and at the time of such examination, was the owner of 400 tons of hay in the village of Clintonville, in said county, worth a large sum of money, to-wit: the sum of $8 per ton ; that he was the owner of a large amount of real estate situated in the State of Illinois, and that he, at that time, was worth $40,000 in property, over and above all just debts and liabilities." In the second count, it is alleged, that he testified in substance and to the effect, "that he (said Pollard) was worth the sum of $40,000 over and above all his debts and liabilities, and was the owner of 400 tons of hay, then stacked in the village of Clintonville, worth $8 per ton, and that said hay was free and clear of all liens and incumbrances, and that he (the said Pollard, swearing) owned large amounts of real estate situated in the State of Illinois."

On the trial, the judge before whom the examination was had touching the qualifications of the accused, was called as

a witness, but was unable to testify to any specific statement made. The State's Attorney at that term was then introduced, and he testified that accused stated that he was worth $40,000. The brother of the State's Attorney, and clerk of the court, also a witness for the people, testified that he thought the accused stated that he was worth $35,000 or $40,000. A Mr. Gardner, who was a juror at that term, was then put on the stand on behalf the people, and he testified that accused swore that he was worth $3,000 or $4,000, and this witness is corroborated by Graves and Warren, who were also present at the time. Then, as to the hay: There is a very strong preponderance of evidence that the accused did, in fact, own at the time the quantity of hay which he stated that he owned. But Metzner, the State's Attorney, testified that accused stated on his examination that there was no mortgage or other incumbrance upon it. This witness is supported, in this particular, by no other evidence which we can find in the record; and he does not profess to give the substance and effect of all the accused said upon the matters in question. The accused had, just before the trial, made an application for continuance, based upon an affidavit, in due form, showing the absence, on account of sickness, of a necessary and material witness, Mr. Parks, who was a member of the bar, and present at the time of the examination in question, and that accused expected to prove by this witness, that, at the time of such examination, accused stated that the hay alluded to was subject to an incumbrance of $350. To avoid a continuance, the counsel for the people admitted the affidavit, and that Parks would so testify.

It also appears from the record that the court permitted Metzner, against the objections of the counsel for accused, to give mere hearsay evidence, not only in respect to large amounts of supposed indebtedness against accused, but that he was insolvent, and that there was an incumbrance upon the hay. Under this state of the case the court, on behalf of the people, gave to the jury the following instructions:

"If the jury believe, from the evidence, beyond a reasonable doubt, that on the 17th day of June, A. D. 1870, there was pending in the Court of Common Pleas of the city of Aurora" an indictment against Moses W. Clay, for forgery, as alleged in the indictment in this cause, and that said Clay was in custody under said indictment, and was endeavoring to relieve himself from such imprisonment. endeavored to give bail, and that said court had duly fixed such bail at $3,000, and that thereupon said defendant, Pollard, presented himself before said court as one of the sureties to bail said Clay, and that thereupon the clerk of said court duly administered to said Pollard an oath, touching his ability to become bail for said Clay on said indictment, as charged in this indictment, and thereupon said defendant, at and within said city of Aurora, while so under oath, was examined before said court touching his ability to become bail for said Clay, and then and there wilfully and falsely swore and stated that he was the owner of 400 tons of hay, situated in the village of Clinton-ville, worth $8 per ton, and that the same was free and clear of all liens and incumbrances, or that he, said Pollard, was worth from $35,000 to $40,000 in property over and above all debts and liabilities, when in truth and in fact he owned no hay in said village of Clintonville, or if he did own any, the same was incumbered, or that said Pollard at the time of such examination was not worth $35,000 or $40,000, but on the contrary, was insolvent, and that at the time said Pollard made such statements, he knew the same to be false, and he made the same wilfully and corruptly ; then the jury should find the defendant guilty, provided the jury further believe, from the evidence, that he was accepted by said court as bail for said Clay, on the strength of such statements.

"The jury are instructed, that if they believe, from the evidence, that any of the witnesses, who have testified on the part of the defense, have sworn falsely on any material fact in issue, then they have the right to entirely disregard their testimony unless corroborated by credible evidence in the case."

The foregoing statement of the case presents all the questions made, which we deem necessary to be considered.

First, then, as to the hearsay evidence. That it is incompetent is obvious. The admission of incompetent evidence is not always a ground of reversal. If the court can see, from the whole case, that it could not have prejudiced the party against whom it was given, its improper admission may be disregarded. But we are not only unable to see in this case that it could not have prejudiced the accused, but are satisfied that it might have been very prejudicial. This was perjury, assigned upon an alleged oath by accused that he was worth $40,000, and that the hay, he said he owned, was free from incumbrance. The prosecution was required to prove the falsity of that oath, by what was equivalent to the testimony of two witnesses. The hearsay evidence had a direct tendency to show that the alleged statements of the accused as to what he was worth, and that the hay was free from incumbrance, were both false, and to impress the jury, that the persons from whom Metzner received his information were also to be regarded as witnesses. The admission of the evidence was error, therefore, which can not be disregarded.

The next question arises upon the propriety of the first instruction, above quoted.

It is a well settled rule, that it must appear on the face of the facts set forth in the indictment, that the matter sworn to and upon which the perjury is assigned, was material, or there must be an express averment to that effect. The materiality of the matter sworn to must depend upon the state of the cause and the nature of the question in issue. Roscoe's Crim. Ev. 758. The material point of inquiry upon the examination of the accused, as to his qualifications to go bail for Clay in the sum of $3,000, was not whether he was worth the definite sum of $40,000, but whether he was fully able to respond to the sum of $3,000. If that amount, with costs and interest, could readily be made out of his property, it was wholly immaterial whether ten times the amount could or

not. So, also, as to the hay. We have said that it was shown by a clear preponderance of the evidence, that accused, at the time of his oath, owned about 400 tons of hay; but it was not definitely shown that this hay was within the village of Clintonville, or worth precisely $8 a ton. Now, the first instruction contains no declaration from the court as to the materiality of any of the matters upon which perjury was assigned, nor does it submit that question to the jury. And while the indictment alleges that he swore that he was worth $40,000, the instruction authorizes the jury to find him guilty if he swore he was worth $35,000 or $40,000, and was not worth either of those sums, but was insolvent. It virtually directs the jury to find him guilty, if the hay was not situated in the village of Clintonville; although he might have owned it all, but it was situated just out of the village. It authorizes the jury to find him guilty, if the hay was worth anything less that $8 per ton, or was incumbered to the amount of a single dollar. This rule of criminality is subject to the condition in the instruction, that the jury should also find from the evidence that the accused was accepted by the court as bail for Clay, "on the strength of such statements."

It is the act of false swearing in respect to a matter material to the point of inquiry, which constitutes the crime, and not the injury which it may have done to individuals, or the degree of credit which was given to the testimony. If it was not material whether the hay was within the village of Clintonville, or just outside of it, the influence which the jury may suppose that statement had upon the mind of the court, in accepting Pollard as bail, will not supply, or constitute an equivalent for such want of materiality. That circumstance was clearly not material. The only material point in the statement, as to the hay, was, whether the witness owned it and it was subject to the process of the court. "Where a witness was asked by a judge whether he brought a certain number of sheep from one town to another, altogether, and answered, that he did so, whereas, in truth,

he did not bring them all together, but part at one time and part at another; yet, he was not guilty of perjury, because the substance of the question was, whether he brought them all or not, and the manner of bringing was only circumstance. Upon the same ground it is said to have been adjudged, that when a witness, being asked whether such a sum of money were paid for two things in controversy between the parties, answered it was, when in truth it was only paid for one of them by agreement, such witness ought not to be punished for perjury, because, as the case was, it was no ways material whether it was for one or for both. 2 Rolle 42. Also, it is said to have been resolved, that a witness who swore that one drew his dagger and beat and wounded J. S., when in truth he beat him with a staff, was not guilty of perjury, because the beating only was material. Hetley 97; Hawk. P. C. b. 1, c. 69, s. 8;" Roscoe Crim. Ev. 758.

Lastly, as to the second instruction above quoted. That instruction was clearly wrong. It omits the essential element, that the witnesses had wilfully and knowingly sworn falsely. *Brennan* v. *The People*, 15 Ill. 512; *City of Chicago* v. *Smith*, 48 Ill. 107.

For the reasons stated, the judgment will be reversed and the cause remanded.

*Judgment reversed.*