# The Wabash Railroad Company
## *v.*
## Henry Henks.

1. Appeals from the Appellate courts—*what questions to be considered.* The 89th section of the act of 1877 amendatory of the Practice act, expressly limits the power of this court, on appeal or error, to the determination of questions of law, and prohibits the assignment of error which shall call in question the determination of the inferior or Appellate courts upon controverted questions of fact, except in criminal cases, and cases involving a franchise, a freehold, or the validity of a statute.

Syllabus.

91    406
f92a  5221
f92a  6221

91    406
199   6  15

91    406
103a  5204
103a  205

2. But in cases not within the exception above stated, this court may consider the facts so far as it may be necessary to determine whether the law has been properly applied to the facts, though for no other purpose.

3. PRACTICE—*as to the mode of bringing the facts before this court.* Upon a record brought to this court in which the Appellate court certifies that there was evidence tending to prove a particular controverted point, this court can determine as accurately whether the law has been properly applied as where all the evidence is given in the transcript;—and in respect to all those cases in which this court is precluded from examining as to the determination of the facts, it is much the better practice to make such a certificate.

4. SAME—*presumption as to existence of facts in reference to instructions.* Where an instruction is given, it will be presumed, unless the certificate of the Appellate Court is to the contrary, that there was evidence upon which to base it;—and when an instruction is refused, it will be presumed the facts did not require it unless the certificate shows a different state of case.

5. NEGLIGENCE—*as to speed in street and public crossings.* Railroad companies in cities and thoroughfares must conduct their trains and regulate their speed with reference to the safety of the public, or they will be liable for damages resulting from their negligence or willfulness in this respect. The running of a train at a street crossing, where many are constantly passing, at a greater speed than is allowed by law, is not only carelessness, but the act is also willful. At such places the engine-driver, as well as persons crossing the railroad, must exercise more care than at other places of less peril.

6. The law which prohibits the running of railroad trains at a greater speed than ten miles an hour in cities, is not a license to run at such speed in all cases. If, in some places within a city, that would be a dangerous rate, it would be negligence to run at that speed. The rate of speed must conform to the safety of the public at all places in a city where persons have an equal right to travel with the railroad company to run its trains.

7. SAME—*rule of comparative.* A person struck and injured by a train of cars within the limits of a city at a street crossing, may recover for the injury, of the company, if at the time of the collision the train was running at an improper rate of speed in reference to the plaintiff's safety, even if he was guilty of slight negligence, provided the negligence of the company was gross when compared with that of the plaintiff.

8. INSTRUCTION—*in respect to negligence—ignoring the rule as to comparative negligence.* In an action to recover for injury resulting from negligence of defendant, where the alleged negligence consisted in running a railway train at too high a rate of speed within a city, the jury were instructed that if it appeared the train was running at a greater rate of speed than was allowed by ordinance, and injury resulted therefrom, it would be presumed the injury was occasioned by the negligence of the defendant, and the defendant would be liable "unless the presumption of negligence is overcome by the evidence."

The question of comparative negligence was in issue in the case, and the evidence was conflicting. There was another instruction given for the plaintiff which stated the rule of contributory and comparative negligence, but in view of the conflicting character of the evidence, and therefore the necessity for accurate instructions, the former instruction was held erroneous because it failed to inform the jury in what manner the presumption of negligence might be rebutted. It should have stated the rule of comparative negligence, or referred to the instruction which did state the rule.

9. SAME—*an instruction erroneous in itself—whether cured by others in the series.* It has been held, in an action to recover for injury resulting from negligence, where there was a conflict in the evidence on the issue of comparative negligence, that an improper instruction, ignoring that question, was not cured by others which did state the rule accurately.

10. SAME—*when strict accuracy is required.* Where the evidence is conflicting, and it is doubtful which way it inclines, the jury should be accurately instructed, or the judgment will be reversed.

APPEAL from the Appellate Court of the Third District; the Hon. CHAUNCEY L. HIGBEE, presiding Justice, and the Hon. OLIVER L. DAVIS, and Hon. LYMAN LACEY, Justices.

This was an action on the case, brought by the appellee against the appellant, to recover damages for a personal injury received by a collision of the defendant's train, on August 31, 1877, with a wagon in which the plaintiff was riding. The collision took place in the city of Springfield, at the intersection of Monroe street with defendant's track, while the wagon was in the act of crossing the track. The trial in the circuit court resulted in a verdict and judgment of $4000 in favor of the plaintiff below, which judgment was affirmed by the Appellate Court.

Messrs. HAY, GREENE & LITTLER, for the appellant.

Messrs. McCLERNAND & KEYES, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

The Appellate Court having determined that the evidence preserved in the record sustains the finding of the jury in this case, we must, under the statute, consider the verdict conclu-

sive of the facts.  Regarding the facts as settled we can only, look to ascertain whether the court erred in its rulings and in giving or refusing instructions.

This is the practice established by the act of 1877.  The 89th section of that act expressly limits the power of this court, on appeal or error, to the determination of questions of law, and prohibits the assignment of error which shall call in question the determination of the inferior or Appellate courts upon controverted questions of fact, excepting in the cases enumerated in the preceding section.  The cases referred to in that section are criminal cases, and cases involving a franchise or a freehold, or the validity of a statute.

This case does not fall within either of the enumerated classes, and it must, therefore, be governed by the 89th section of the act.  This legislation has restored the practice as it was before the statute authorized the assignment of error on the verdict of the jury.  It takes from this court the consideration of facts, unless it be to determine whether the law has been properly applied to the facts.  The finding of the facts by the Appellate Court must be considered, by us, as conclusive.  When the evidence is returned to us in a bill of exceptions, we may, no doubt, look into it, for the purpose only of determining whether instructions are properly given, modified or refused. But when the Appellate Court certifies that there was evidence tending to prove a particular controverted point, we can determine as accurately whether the law has been properly applied, as where all of the evidence is brought to this court in the transcript.  Such a certificate is greatly preferable, as it does not encumber the record, and reduces the expense of litigation very largely.  Thus, it will be seen that it is wholly unnecessary, in a case of this character, to embody the evidence in the transcript brought before us.

Where an instruction is given, we will presume, unless the certificate of the Appellate Court is to the contrary, that there was evidence upon which to base it.  And when an instruction is refused, we will presume that the facts did not require

it, unless the certificate shows there was evidence upon which to base it. Where the certificate states there was evidence tending to prove an issue of fact, we can readily determine whether an instruction is properly given, modified or refused, and the Appellate Court can readily certify that there was evidence upon which to base the instructions, or, if not, which were given without such evidence. Or, the certificate can state that the evidence tended to prove specified facts: from which legal propositions can be raised on the instructions. Where evidence has been offered, and admitted or rejected, the certificate, with the pleadings, will readily disclose the question as to whether the ruling of the court was correct. In such a case it is unnecessary to present all the evidence, and to do so would be improper, practice.

Were the jury properly instructed as to the law on the facts as found by the jury and the Appellate Court? They were told, by the second instruction given for the plaintiff, that the city ordinance restrained the defendant company from running its trains at a greater rate of speed than ten miles an hour in its limits. "And if the jury believe, from the evidence, that defendant did run its train through said limits at a greater rate of speed than ten miles an hour, as charged in plaintiff's declaration, and that, by so running its trains at said rate of speed, the said train struck and hurt plaintiff, then, in such case, such hurt shall be presumed, under the statute of this State, to have been negligence of the defendant, or its agents, and the defendant is liable in damages for such hurt, unless they shall further believe, from the evidence, that the presumption of negligence is overcome by the evidence."

The Appellate Court has not certified that there was evidence tending to prove that both parties were guilty of negligence, but we may, as the evidence is in the transcript, examine it to see whether the evidence raised that issue. But appellee, by his fifth instruction, asked, and the court instructed the jury, that, although plaintiff was guilty of negligence, " yet, if they further believe that defendant's negligence was gross,

and the plaintiff's negligence was slight compared with defendant's negligence, and the plaintiff received injury from the stroke of defendant's train, under these circumstances the defendant is liable for such injury."

From the fact the court below gave this instruction, we must conclude comparative negligence was an issue before the jury, and that there was evidence tending to prove it. If there was no such evidence, the plaintiff would not have asked the instruction, nor would the court have given it, and the evidence does show that it was an issue.

The Appellate Court has certified that the evidence was conflicting, and in such a case it is important that the jury should be accurately instructed. And this second instruction does not require the consideration of comparative negligence by the jury. It is true, it concludes by telling them that the presumption of negligence arising from running the train at a greater rate of speed than ten miles per hour, in the city limits, might be overcome by evidence, but it fails to tell the jury in what manner the presumption may be overcome by evidence,—whether by proving that rate of speed was not negligence, or by the negligence of appellee, or in some other mode. The instruction should have been qualified by stating the rule of comparative negligence, or by referring to the fifth of appellee's instructions.

We have no means of learning whether the jury may not have been controlled by this instruction in finding their verdict, notwithstanding they may have believed the plaintiff's negligence was not slight or that of appellant was not gross. Where the evidence is conflicting and it seems to be doubtful which way it inclines, we will reverse, unless the jury are accurately instructed. The Appellate Court certifies it was conflicting, and we will presume it was, therefore, not free from doubt. This instruction was inaccurate and should have been modified.

It is also insisted, that the fourth of appellee's instructions was wrong, and calculated to and did mislead the jury. It is as follows:

"It is proper for and the duty of the jury, to consider all the circumstances attending the injury received by the plaintiff, and complained of by him in his declaration, and, upon such consideration, to determine whether the train was running at an improper rate of speed, in reference to plaintiff's safety, at the time and when he was hurt."

It was one of the issues made by the pleadings, whether the train was running at an improper rate of speed at the time and place of the accident, and to that extent the instruction was undoubtedly correct.

The averment in the first count of the declaration is, that appellant improperly drove its engine, and, by negligence and carelessness, appellee was injured. Now, this instruction, so far as it directed the jury to consider whether the train was running at an improper rate of speed, was only in accordance with the averment in the declaration, and had it been limited to the safety of the community, there would have been no objection to it. There can be no doubt that railroad companies in cities and thoroughfares, where there is reason to suppose persons will be, are under a legal obligation to regard the safety of such persons. They must conduct their trains and regulate their speed with reference to the safety of the public at such places, or be liable for damages resulting from such negligence or willfulness.

When an engine-driver, at a street crossing, where he knows persons are constantly passing in large numbers, runs at a higher rate of speed than is allowed by law, he must intend the act, and if so, it is willful, and can not be regarded as mere carelessness. Or, where he passes such a place at a high rate of speed, knowing that almost certain injury must be inflicted on some one, it amounts to willfulness, and not mere carelessness. He must have due regard for human life. He is not permitted by any law, human or divine, to thus destroy human beings who are exercising a legal right, as fully as he is, in crossing such places. Even if individuals are negligent in the exercise of their rights, they do not thereby forfeit their

lives, so as to authorize him to destroy them. He knows or should know that all persons are not capable of exercising the utmost degree of diligence, and many not a very high degree of diligence, and others, again, incapable even of an ordinary degree of care. He has no right to presume all persons will exercise the highest degree of diligence possible, as that is not required: for if they did, then he need not observe any, the slightest degree of care. At such places the engine-driver, as well as the person crossing the railroad, must exercise more care than at other places of less peril, because they both know that the danger is greater.

It is urged that the law has licensed these trains to run at a rate of speed not exceeding ten miles an hour in cities.

This is clearly a misapprehension. . The law prohibits their running at a greater rate of speed. But if, in some places in a city, that would be a dangerous rate, it would be negligence to run at that speed. They must conform the rate to the safety of the public at all places in the city where persons have an equal right to travel as the company have to run their trains. The legislature had no intention to permit engineers to run at such a rate of speed, where it would necessarily, or even probably, produce the death of individuals.

But the vice of this instruction is, that it required the company to run its trains with reference to appellee's safety, without any regard for his conduct. He was not absolved, as this instruction seems to imply, from all care in crossing the track of the railroad. It would authorize a recovery, although appellee was guilty of even gross negligence. Had it been qualified by informing the jury that they might determine whether the train was running at an improper rate of speed, in reference to plaintiff's safety, at the time he was hurt, if he was even guilty of slight negligence, and that the company was guilty of gross negligence when compared, then there could have been no error in the instruction. But it is not so limited, but is far from it.

On an examination of all the instructions given we fail

to find that these instructions were so qualified as to prevent their misleading the jury. They, for aught we can see, may have acted upon them and disregarded the others, and as the evidence was conflicting, they should have been properly modified or refused.

In the case of *Chicago and Alton Railroad Co.* v. *Murray*, 62 Ill. 326, it was held, that in a case like this, of conflict on the issue of comparative negligence, an improper instruction, ignoring that question, was not cured by others that stated the rule accurately, and the judgment was reversed.

The Appellate Court, for the error in giving these instructions, should have reversed the judgment of the circuit court. The judgment of the Appellate Court is, therefore, reversed, and the cause remanded.

*Judgment reversed.*