CLARA OVERTOOM, Admx.

*v.*

CHICAGO AND EASTERN ILLINOIS RAILROAD COMPANY.

*Opinion filed October 13, 1899.*

1. EVIDENCE—*that crossing is in populous part of city is competent in suit for injury.* Evidence that the crossing at which the plaintiff's intestate was killed is in a thickly settled and populous part of the city and constantly traveled over by large numbers of people is admissible in support of an allegation that the train which killed the intestate was running at an unreasonable rate of speed.

2. SAME—*testimony that train was going "fast" is competent.* Evidence that the train which ran down the plaintiff's intestate "was going fast" is not incompetent, although the witness is unable to state the speed in miles per hour.

3. SAME—*what competent in a suit for damages for death at crossing.* Evidence as to the height of a trolley wire at the place where a person was struck and killed by a train which is alleged to have been running at unsafe speed is admissible in an action to recover damages for his death, where there is evidence that he was thrown as high as the trolley wire by the train.

4. SAME—*witness crossing track shortly ahead of deceased may tell of condition of gates.* One who passed over a crossing just before the arrival of trains, by one of which plaintiff's intestate was killed, may testify whether the gates were up or down at the time, as tending, to some extent, to show whether they were up or not when the intestate went upon the crossing.

5. SAME—*stenographic notes at inquest not competent to contradict witness' testimony.* Stenographic notes of the testimony taken by one present at a coroner's inquest are inadmissible to contradict a witness on the trial of an action brought to recover damages for the death of the deceased, since the deposition of such witness, required by section 18 of chapter 31 of the Revised Statutes of 1874 to be preserved by the coroner, is the best evidence.

6. SAME—*coroner presumed to have reduced witness' testimony to writing.* Compliance by a coroner with section 18 of chapter 31 of the Revised Statutes, requiring the testimony of witnesses to be written out and signed, will be presumed on appeal, in the absence of evidence to the contrary.

7. WITNESSES—*when jury cannot disregard testimony of witness on ground of its falsity.* The jury are not authorized to disregard the entire testimony of a witness whom they believe to have testified falsely upon some matter, in the absence of a corrupt motive on

his part, and when the erroneous testimony is due to forgetfulness or an honest mistake.

8. APPEALS AND ERRORS—*when improper impeachment of testimony will reverse.* The admission of incompetent evidence to contradict a witness who testified that the gates at a railroad crossing were up when the train which killed the plaintiff's intestate passed is prejudicial, where the verdict is for defendant.

*Overtoom* v. *C. & E. I. R. R. Co.* 80 Ill. App. 515, reversed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

CHESTER FIREBAUGH, for appellant.

W. H. LYFORD, and S. A. LYNDE, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

The appellant brought her action against appellee, in the superior court of Cook county, to recover damages for the alleged wrongful killing of her intestate, Adrian Overtoom. There was a verdict and a judgment for the defendant, which judgment has been affirmed by the Appellate Court. The errors alleged by appellant on this her further appeal relate to the admission and exclusion of evidence and to the giving and refusing of instructions.

The evidence disclosed that a few minutes before eight o'clock, about dusk, on the evening of April 20, 1895, Overtoom, while passing over the public crossing of appellee's railroad and Michigan avenue, in Chicago, was killed by one of appellee's trains. The street runs north and south, and is intersected by a side-track and two main tracks of appellee's road running north-west and south-east. Overtoom walked upon the crossing just as a freight train was passing north-westerly on one of the tracks, (which one is left uncertain by the evidence,) and, when about to cross over behind the freight train as it passed, was struck and instantly killed by an engine

drawing a tender and caboose car and running to the south-east on the other track.

The declaration, in its several counts, alleged that Overtoom was using ordinary care for his own safety and that his death was caused by the negligence of the defendant,—that is to say, in some of the counts it was alleged that the street in question was "a much traveled public highway and the crossing in a populous and thickly settled part of the city of Chicago," and that the defendant negligently ran its train over said crossing "at a very unusual and unreasonably fast and unsafe rate of speed," and by reason of such negligence ran its said train against and killed said Overtoom. In other counts it was alleged that the defendant failed to ring a bell or blow a whistle upon its said engine and train before it reached the crossing, as required by the statute; that the defendant failed to keep a proper lookout ahead of its running train, and to keep its said engine and train under proper control, and thereby caused the injury. In others there were additional allegations, in substance, that the defendant had erected at the crossing adjustable gates, which, as was its custom well known to the plaintiff, it let down across the street and sidewalks whenever a train or an engine was about to pass, which gates operated both as a signal of the near approach of trains and also to stop the passage of persons onto the crossing, but that at the time in question the gates were not let down, and the defendant thereby told the plaintiff, in effect, that it was safe to enter upon said crossing, which he did, and thereupon defendant negligently ran its engine and train against and killed him. Other counts were added, one setting up an ordinance of the city of Chicago prohibiting trains from running in that district of the city at a greater rate of speed than thirty miles an hour, and another prohibiting trains from running in any part of the city at a greater rate of speed than ten miles an hour, and alleging that the train in question was running at a speed

prohibited by said ordinances. To all of these counts the defendant pleaded not guilty.

The first error assigned is, that the trial court refused to allow the plaintiff to prove that this crossing was in a thickly settled and populous part of Chicago, and that the street at this crossing was constantly traveled over by large numbers of people. This error is well assigned. The evidence tended to prove the allegations of one or more of the counts, and it should have been admitted. As said in *Elgin, Joliet and Eastern Railway Co.* v. *Raymond,* 148 Ill. 241: "Whether, independent of the ordinance, the rate of speed was such as, under all the circumstances, constituted negligence, was a question presented under the fourth count, and one which it was the duty of the court to submit to the jury." Independently of any ordinance, it was the duty of the defendant, at common law, to regulate the speed of its trains with proper regard to the public safety, "and a high rate of speed might be perfectly proper at country crossings although it might be considered negligence at a crossing in a populous city." (3 Elliott on Railroads, sec. 1160; *Wabash Railway Co.* v. *Henks,* 91 Ill. 406; *Chicago and Northwestern Railway Co.* v. *Dunleavy,* 129 id. 132. See, also, *Chicago, Burlington and Quincy Railroad Co.* v. *Perkins,* 125 Ill. 127.) The evidence tended to prove a rate of speed ranging, according to the testimony of different witnesses, from twelve to forty miles an hour. The engineer put it at twelve miles. Whether or not the train was running at an "unreasonably fast and unsafe rate of speed," as alleged, depended in a great degree upon the extent and frequency of the use of this crossing by the public. Overtoom, as one of the public, had a right to use this crossing, to go upon and travel over it, and the defendant, being charged with knowledge of the extent of the use of the street by the public and the consequent danger in running its trains over the same at a high and unusual rate of speed, was in duty bound to regulate its speed with due regard to

the safety of those having occasion to use the street, and it was certainly proper to prove the extent of such use in connection with the speed of the train.

While the court permitted certain witnesses to testify to the degree of speed at which the train that struck the plaintiff was running, the testimony of other witnesses for the plaintiff's intestate, that "the train was going very fast," was stricken out. This was error. A witness might know and truthfully say that a train was running fast or slow and yet be unable to state the speed in miles per hour, and such inability would not render his testimony of no value, or incompetent upon the question of speed. *Illinois Central Railroad Co.* v. *Ashline*, 171 Ill. 313.

Again, the evidence tended to prove that when Overtoom was struck by the engine he was thrown "as high as the trolley wire," but the court refused to allow the plaintiff to prove the height of the trolley wire at that time and place. This ruling, also, was erroneous. The evidence, if admitted, would have tended to prove the issue made on some of the counts of defendant's alleged negligence in running its train at an unsafe rate of speed.

One of the plaintiff's witnesses testified that he passed over the crossing when the freight train was within one hundred and fifty feet, and the train, coming from the opposite direction, was within a quarter of a mile of the crossing, and the court refused to allow the plaintiff to prove by him whether the gates were up or down at the time. This testimony should have been admitted. It was so near to the approach of the trains that, if the gates were then up, it tended to some extent to prove they were up when Overtoom passed to go upon the crossing, and bore upon the question of his alleged contributory negligence, which was perhaps the most serious question in the case.

Edward H. Senniff, who, acting as attorney and stenographer for appellee, took in short-hand notes the testimony of the witnesses at the coroner's inquest and upon

the trial below, was called as a witness on appellee's behalf, testified that his notes were correct, and, against the objection of appellant, was permitted to read to the jury his notes so taken of the testimony of Thomas J. Silverman, a witness for appellant, for the purpose of impeaching Silverman. Silverman had testified on the trial that he was about one hundred yards away and saw the train strike Overtoom, and that he ran to him and helped turn him over; that the gates were open at the time and that the train was running thirty or thirty-five miles an hour; that he did not hear the bell ring or whistle blow; that the freight train made a great deal of noise. The witness Senniff read from his notes to the effect that Silverman testified at the coroner's inquest that the gates were down at the time of the accident. Senniff testified that he remembered, in a general way, what the testimony was, but could not say that he had any independent recollection outside of his notes. The witness did not pretend to testify from memory refreshed by his notes, but read his translation of so much of his notes to the jury as evidence as was called for, the court remarking, on overruling plaintiff's objection, that it was "much better than testifying from memory." It is not necessary in this case to consider whether the notes of testimony taken by one who was present and heard it, and who swears to their correctness, may not in some cases be competent as the best evidence of what that testimony was. (See *Mineral Point Railroad Co.* v. *Keep,* 22 Ill. 9; *Roth* v. *Smith,* 54 id. 431; *Iglehart* v. *Jernegan,* 16 id. 513; *Schoonover* v. *Myers,* 28 id. 308; *Wilson* v. *Genseal,* 113 id. 403; *Kankakee and Seneca Railroad Co.* v. *Horan,* 131 id. 288; *Luetgert* v. *Volker,* 153 id. 385; *Brown* v. *Luehrs,* 79 id. 575.) But in *Phares* v. *Barber,* 61 Ill. 271, this court held that it was not error to exclude a transcript of a stenographic report of a witness' former testimony, offered for the purpose of contradiction. In the case at bar the stenographer's notes, or the transcript of them, were incompetent for

another reason: The testimony of Silverman was taken by the coroner, and, as the statute required it, we will presume it was written out and signed by the witness and filed and preserved in the office of the coroner. (Rev. Stat. chap. 31, sec. 18.) Had his deposition thus taken been produced and Silverman's attention properly directed to it, it could have been used to contradict him. (*Consolidated Ice Machine Co.* v. *Keifer*, 134 Ill. 481; *United States Life Ins. Co.* v. *Vocke*, 129 id. 557.) That deposition was the best evidence, and the stenographer's notes were not admissible.

The argument is made, however, and the Appellate Court seems to have decided, that this and other errors in the rulings of the trial court did not affect the question of contributory negligence, but only the question of the negligence of appellee, and that in support of the verdict it must be presumed that the jury found that Overtoom did not exercise ordinary care for his own safety but was guilty of contributory negligence. We are of the opinion that it cannot reasonably be said that the errors complained of did not improperly influence the jury in determining whether or not Overtoom contributed to the injury by his own negligence. The controverted question of fact whether the gates were up or down affected the question of negligence on the part of each of the parties. As said in Beach on Contributory Negligence (3d ed. sec. 452): "In the ultimate determination of the question whether the plaintiff was guilty of negligence two separate inquiries were involved: First, what was ordinary care under the circumstances; and secondly, did the conduct of plaintiff come up to that standard." Manifestly, the circumstances must be shown before the question of contributory negligence or the defendant's negligence can be determined. Whether the gates were up or down was one of such circumstances. If the gates were up and he was thereby induced to believe it was safe to attempt to cross, and did so, his being upon the track at the time he was struck, or his failure to look and observe the

coming train, could not so well be attributed to lack of
ordinary care on his part as it might under different cir-
cumstances. Silverman had testified that the gates were
up, and Senniff's notes were admitted to prove that he,
Silverman, had testified before the coroner that they were
down, and thus this incompetent evidence clearly affected
some of the material facts upon which rested the ques-
tion of negligence, not only of the defendant, but also of
the plaintiff. Indeed, under the facts in this case it can
not be said that any of the errors mentioned above were
harmless or did not influence the jury in their finding.

The error in allowing the notes of Senniff to be read
in evidence was intensified by the following erroneous
instruction given at the request of the defendant:

"The jury are instructed that if they believe any wit-
ness has testified falsely, then the jury may disregard
such witness' testimony, except in so far as it may have
been corroborated by other credible evidence in the case
which you believe to be true."

A witness may have testified falsely upon some mat-
ter inquired about, from forgetfulness or honest mistake,
and in such case the jury would not be authorized to dis-
regard his entire testimony, whether corroborated or not.
It is the corrupt motive, or the giving of false testimony
knowing it to be false, that authorizes a jury to disregard
the testimony of a witness and the court to so instruct
them. (*Pollard* v. *People,* 69 Ill. 148; *Pennsylvania Co.* v.
*Conlan,* 101 id. 93; 11 Ency. of Pl. & Pr. 304.) Standing
alone, this instruction has other patent defects not nec-
essary here to mention.

The judgment of the Appellate Court and that of the
superior court are both reversed, and the cause is re-
manded to the latter court for further proceedings not
inconsistent with what we have here said.

*Reversed and remanded.*