## Chicago City Ry. Co. v. Nannie Bundy.

1. VERDICTS—*When Not to be Disturbed.*—A verdict upon conflicting evidence will not be disturbed unless it is clear that the jury were moved by passion or by prejudice.

2. DAMAGES — *When an Appellate Court Will Not Disturb the Amount of Damages Rendered.*—An appellate court will not substitute their judgment as to the amount of damages in case of tort for that of the jury and of the trial judge, unless, the whole record being considered, the amount allowed is so excessive as to show prejudice or partiality.

3. WITNESSES—*Non-experts May Testify as to Speed of Car.*—It is not error to allow non-expert witnesses to testify as to the speed of a car.

4. HYPOTHETICAL QUESTIONS—*Scope Allowed to Counsel in Framing.*—It is the right of counsel to assume within the limits of the evidence any state of facts which he claims the evidence justifies, and have the opinions of experts upon the facts thus assumed. The facts are assumed for the purpose of the question, and for no other purpose. If the facts stated in the hypothetical case are not proved the opinion goes for nothing. Counsel may embrace in hypothetical questions such facts as he may deem established by the evidence, and if the other side does not think all the relevant facts are included in such question, it may include them in questions propounded in cross-examination.

5. INSTRUCTIONS—*Not Error to Refuse When Ground is Covered by Others Given.*—When the propositions contained in an instruction requested are embraced in other instructions given, it is not error to refuse it.

6. SAME—*Erroneous Where They Have no Application to the Facts of the Case.*—An instruction which has no application to the facts of the case is properly refused.

7. APPELLATE COURT PRACTICE—*Case Should Not be Reversed for Harmless Errors.*—When the court can see from the record that an error committed by the trial court in the progress of the case was a harmless one, or that its injurious effect or harmful character was obviated so as not to affect injuriously, in the final judgment, the rights of the parties against whom the error was committed, it should not be allowed to work a reversal.

**Trespass on the Case,** for personal injuries. Appeal from the Superior Court of Cook County; the Hon. SAMUEL C. STOUGH, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed October 8, 1903.

WILLIAM J. HYNES and SAMUEL S. PAGE, attorneys for appellant; MASON B. STARRING, of counsel.

HENRY R. RATHBONE, attorney for appellee.

MR. PRESIDING JUSTICE BALL delivered the opinion of the court.

July 7, 1893, appellee was injured by stepping or falling off one of the cars of appellant near the intersection of State street and Forty-fifth court in the city of Chicago. She brought suit against the company and recovered a judgment for $5,000, from which this appeal was perfected.

First. Appellant urges that the verdict and judgment in this case are contrary to the clear weight of the evidence. Appellee says that upon the day in question she took an open south-bound car at Thirtieth street, seating herself in the last car about two seats from the rear, facing north. That when the train was running between Forty-fourth and Forty-fifth streets the conductor passed her on the footboard, when she asked him to let her off at Forty-fifth court. His reply was that he would. That when the train approached that court he rang the bell and "the car slowed down." That as the car reached the south corner of the intersection she rose to her feet and thinks she had taken one or two steps, when the car, instead of stopping, gave a sudden jerk, and "jerked me from the body of the car to the ground." That before she fell she had faced from the north to the left, and she fell to the west.

Jesse C. Brown, a grocer, whose place of business was on the west side of State street about 125 feet south of Forty-fifth court, says that he came to the front door of his store. " I heard the train coming from the north and the brake thrown on and thrown off, and I looked up and saw this woman falling out of the car, and I ran to help pick her up." That the train was then twenty or thirty feet south of Forty-fifth court. " The car was starting up fast." That her body was out of the car when he first saw it. " She was not on the footboard. Her feet were apparently in the car or just coming out." She went down head first. The car ran 100 feet before it stopped. "As she came out there, her face was down. Her head pointed west."

George W. Gillum, an owner and trainer of running horses, who was in the same aisle with appellee, but in the opposite seat, testifies that he heard appellee ask the conductor, who was then on the footboard, to let her off at Forty-fifth— "I don't know whether she said street or place or court." "The conductor nodded his head and spoke a word of low tone." The brakes were applied and the car slowed down to "a mile an hour, or something like that." As the train reached Forty-fifth court appellee raised out of her seat; she didn't stand straight up, bent about half way over; and in an instant, a few seconds, she was out, fell out. She made one or two steps and fell out in the street. She didn't reach the edge of the car nor get down on the footboard." "The brakes were let off and the car moved off with a sudden increase of speed." She fell head foremost, with her head to the west. The train ran twenty or thirty yards before it came to a stop. Witness was the first person who got to her. She was unconscious. Before the accident happened the car was running at full speed.

As to the circumstances of the accident, appellant called the following witnesses :

Morgan G. Evans, assistant cashier for the Chicago Great Western Railway, who was on the front part of the car upon which appellee was riding, saw her "get up from her seat and step off of the car." When she got up and when she got off, the train was in motion. "At the time she got up and stepped off there was no jerk or surge of the car that I noticed." The car was running at its usual rate of speed. "When she got off, as far as I could determine, she arose from her seat and stepped down onto the running-board of the car and stepped off." She fell with her head to the south and her feet to the north. When she stepped off, the car was going about nine miles an hour.

Michael Lavin, a police officer, who stood upon the west side of State street, about fifty feet north of Forty-fifth court, says, at the time she got off "the car was going fast." Her head fell to the south. "When I first saw her

she was just falling. I don't know what part of the car she came from. I could not see what she was doing with her feet. "

John Corr, the gripman of this train, did not see appellee get off or fall off the car. "There was no slack up in the speed at time I crossed Forty-fifth court, or up to the time I got the emergency signal." The train might have run 100 feet after he got the emergency bell before it stopped.

M. H. Hagan, the conductor of the train, says appellee gave him no signal to let her off at any place. "I didn't know she wanted to get off at Forty-fifth court." There was no stop or slowing up at Forty-fifth court. "The first I saw indicating that she wanted to get off, she was in the act of stepping off the footboard. Up to that time between Forty-fifth court and that place, there had been no jerking or surging of the train; nor was there at the time she got off. My train was then in motion. She stepped off about sixty or seventy feet south of Forty-fifth court. When I saw her stepping off the footboard she was facing west." She fell toward the south. "The first I saw of her was when she was on the running-board. I did not see her get up from her seat, nor walk to the running-board and get down upon it." * * * "When I saw her she was stepping off into air." * * * "My car was then going about twelve miles an hour." The car stopped in seventy-five to eighty feet. She was lying on her back, her head facing to the south.

From this recital of the evidence it appears that the manner in which this accident happened, as told by appellee, is substantially corroborated by two witnesses, Gillum and Brown. That the fall of appellee was not caused by any negligence of appellant but was occasioned by her want of due care, is sustained by the testimony of three eye-witnesses, and by that of another who did not see her until she was falling out of the car.

It is also argued by appellant that the evidence of the witness Brown differed materially in the two trials had of

this case. There is ground for the criticism. The excuse of Brown is that in the former trial he was confused.

To impeach the evidence of Gillum appellant put in two statements made by him to its attorneys. Before the first trial they twice called him into their offices and there interrogated him. He signed these papers as they were then written out. They differ in important particulars from his evidence as given on the trial. As to the first paper, Gillum swears that there are words in it he never uttered; and as to the second, he says that he then made no statement, but signed the paper presented to him because he was then told it was identical with the one he had theretofore signed.

The jury heard and saw these witnesses. From these conflicting statements it was the duty of the jury to find the truth. It is their province to pass upon the facts. They have done so. There is evidence in the record which, if believed by them, sustains their verdict. After a careful consideration of the whole case we can not say that they were moved by passion or by prejudice, or that their verdict is manifestly against the weight of the evidence. It is not necessary for us to cite authorities to sustain the settled rule that under these circumstances we can not disturb the verdict.

Second. Appellant claims that the verdict and judgment are excessive. Upon this question many witnesses were called by each contestant. If the ailments from which appellee was confessedly suffering at the time of the trial were caused by the accident, the amount recovered is not so excessive that we ought, for that reason, to set it aside and to grant a new trial. It is inherent in the verdict that upon this issue the jury found with appellee. The learned trial judge, who had the same opportunity which was afforded the jury to observe the conduct and bearing of the witnesses, by entering judgment upon the verdict after appellee had remitted $2,000 therefrom, approved the finding as thus reduced. Appellate tribunals seldom substitute their judgment as to the amount of dam-

ages in case of tort for that of the jury and of the trial judge. They will not do so unless, the whole record being considered, the amount allowed is so excessive as to show prejudice or partiality.

Third. Appellant argues that the trial court erred in admitting improper evidence on behalf of appellee, and in refusing proper evidence offered by appellant. The many instances cited cover fifteen pages of its brief. To comment upon each of them in detail would unreasonably extend this opinion. It is sufficient to say that we have carefully considered them, and find that while some of the rulings of the court upon the admission or upon the rejection of evidence are faulty, none of them constitute reversible error. The most important rulings are as follows:

When an attempt was made to show that appellant had been endeavoring to settle this case "behind Captain Black's back," and an objection was interposed, and Captain Black was appealed to to say whether appellant's position was not correct, the court said: "There is no need of debating this subject. The court has its own idea about it, and I think the jury has, too. I know you lawyers have on that subject." Appellant claims that these words were extremely detrimental to it, as they assume that it had tried to settle this case, "thus showing it considered itself liable; and, second, had gone about settling this case in an underhanded, despicable and illegal way." It is a sufficient reply to this point to say that the question was not answered, and that the words of the court were not objected to nor excepted to.

Non-expert witnesses were permitted to testify as to the speed of the car at the time of the accident. This was not error, as is decided in Overtoom v. C. & E. I. R. R. Co., 181 Ill. 323.

It was objected that the hypothetical question put to Dr. Skelton was improper and incompetent. This question left the jury entirely free to determine for themselves the truth or falsity of the facts assumed for the purpose of framing the question. Economy Light, etc., Co. v. Sheridan, 200 Ill. 441.

In Lawson on Expert and Opinion Evidence, p. 166, it is said :

"It is the right of the counsel to assume within the limits of the evidence any state of facts which he claims the evidence justifies, and have the opinions of experts upon the facts thus assumed. The facts are assumed for the purpose of the question and for no other purpose. If the facts stated in the hypothetical case are not proved, the opinion goes for nothing. Counsel may embrace in hypothetical questions such facts as he may deem established by the evidence, and if the other side does not think all the relevant facts are included in such question, it may include them in questions propounded in cross-examination."

We deem further detail unnecessary.

" When the court can see from the record that an error committed by the trial court in the progress of the case was a harmless one, or that its injurious effect or harmful character was obviated so as not to affect injuriously, in the final judgment, the rights of the parties against whom the error was committed, it should not be allowed to work a reversal. It is more important in the administration of justice, that litigation should end in the attainment of substantial justice, than that a record of the proceedings should be built up which is without flaw or blemish." W. Chicago St. Ry. Co. v. Maday, 188 Ill. 310.

Fourth. We find no substantial error in the instructions given for appellee.

The second instruction given for appellee correctly defines the duties of common carriers. The question of care upon the part of appellee for her personal safety (which is not contained in this instruction) is fully covered by other instructions given. As a general rule a principle once plainly stated in a series of instructions need not be repeated.

The criticism of the third instruction given, that it omits the element of the number of witnesses, is a mistaken one. The instruction reads—" the preponderance of evidence in a case is not alone determined by the number of witnesses testifying to a particular fact," etc.

The objection to the fourth given instruction is not well taken. This form is approved in Taylor v. Felsing, 164 Ill.

331; and in West Chicago St. R. R. Co. v. Marzalkiewiecz, 75 Ill. App. 240.

The objection to the sixth given instruction is disposed of by what the court say in Chicago C. Ry. Co. v. Biederman, 102 Ill. App. 620.

The modification of appellant's twenty-fifth instruction was proper. The part stricken out is included in that which preceded it.

The twenty-sixth instruction of appellant, which was refused, is covered by instructions eleven, twelve and thirteen, as given. Appellant's twenty-seventh instruction was properly refused, because it had no application to the facts of the case. There is no claim here that the alleged misconduct on the part of the servants of appellant was willful.

The twenty-eighth refused instruction is covered by Nos. 19 and 9, as given to the jury.

The twenty-ninth refused instruction was unnecessary. Its only office was to warn the jury against the absurdity of considering the question of damages if they found appellee had no cause of action.

The thirtieth refused instruction might well have been given. While it is practically covered by the given instructions relating to the credibility of witnesses, it was a proper instruction, but in our opinion its refusal was not reversible error.

The thirty-first refused instruction is covered by instruction No. 3 as given.

Believing no error reversible in character appears in the record, the judgment of the Superior Court is affirmed.