## BOY KILLED IN RUNNING ACROSS TRACK BEFORE AN ELECTRIC CAR.

Court of Appeals for Hamilton County.

THE CINCINNATI TRACTION COMPANY v. ALBERT BEEBE, ADMINISTRATOR, ET AL.*

Decided, June, 1914.

*Negligence—Conflicting Testimony With Reference to Accident—Efforts of Motorman to Prevent Striking of Boy—Speed of Car—Pecuniary Damage to Next of Kin—Charge of Court.*

1. While an ordinary person may not be at all accurate in giving in figures the speed of a car or train at a given moment, yet his knowledge of speed may be sufficiently substantial to enable him to give testimony which will be an aid in determining whether under all the circumstances of the case the speed was excessive at the time of the accident.

2. In determining what amount of damages, if any, may be awarded to parents for the wrongful death of a minor child, the jury may consider the age and sex of the child, the circumstances and condition of life of the parents, and other helpful facts existing at the time of the child's death.

*Kinkead & Rogers,* for plaintiff in error.
*Thomas L. Michie* and *William P. Hohmann,* contra.

JONES (Oliver B.), J.; SWING, J., and JONES (E. H.), J., concur.

This is a proceeding in error seeking to reverse the judgment entered by the Superior Court of Cincinnati, for damages by reason of the death of Clifford Beebe.

Clifford Beebe, a boy seven years of age, was killed by a street car operated by the defendant below, on Sixth street just west of Cutter street in Cincinnati. Sixth street has at this point a double track street railroad upon it. The car which struck the

*Affirmed without opinion, January 19, 1915, *Cincinnati Traction Co. v. Beebe,* 90 Ohio State.

decedent was a west-bound car operating on the north track. The east-bound cars ran upon the south track.

The testimony in regard to the facts of the accident is rather conflicting and is of a character peculiarly appropriate for suɔmission to a jury for determination.

The witnesses for the plaintiff agree in their testimony that the decedent with other boys just out of school on their way home came from the south side of Sixth street crossing the street to the north, and that some boys threw decedent's hat across the street in front of the car and the decedent intent upon recovering his hat ran in a northwesterly direction and was struck by the car which ran over him almost cutting him in two across the abdomen, the body being between the two left or south wheels of the car, which was a single truck summer car. Their testimony is to the effect that the body lay with the head toward the northwest under the car, and the feet protruding out to the southeast, and it was necessary to obtain a plank or timber from the express stable nearly opposite, to lift the car so that the body could be taken out.

Several witnesses for the defendant testified that the boy ran from the north side southwardly in front of the car, all agreeing however that he was struck by the left side of the car and the body found on the south rail under the car, some saying that the head was to the southward and the legs under the car. The fact that it was under the left wheel to the south side of the car indicates that those witnesses who testified that he came from the south, were probably correct, rather than those who stated that he came from the north.

The testimony of the motorman in regard to just how the accident occurred is rather inconsistent in itself. He says that the boy ran from the north sidewalk in front of the car when it was about ten feet from him, and almost cleared the track, when the left bumper of the car hit the boy in the right shoulder and hurled the body around and threw him under the car in a manner he could not explain. He states that the boy's head was to the south and his feet under the car; that he procured a heavy plank or timber and helped pry the car up so that the boy could

be taken out. He says that the car was slowed up at Cutter street for the purpose of stopping in response to the signal of the conductor to permit a passenger to alight; that the passenger jumped off before the car had entirely stopped, and the signal was given to go on; that he let off the brake and started the car up but was not running more than four or five miles per hour when the accident occurred. He claims to have been ringing the gong repeatedly and trying to stop the car with the brake and that for that reason he was so occupied he made no attempt to use the fender. He says that he did not look on the south side and did not know how many boys or people there might be on the south side of the street or to the south of the car on the street.

A witness, Donnelly, called by plaintiff, stated that he thought from the action of the motorman that he was trying to drop the fender but that it failed to drop. Another witness testified that the motorman took the switch-iron and leaned forward as though he was trying to push the boy out from in front of the car.

There is some conflict in the testimony as to whether or not the gong was sounded, and considerable difference in the statements as to the speed of the car. The fact that many of the witnesses were unable to give the rate of speed in the number of miles per hour did not in our opinion disqualify them from testifying. An ordinary person can not be at all accurate in giving the rate of speed in figures unless he is a person who has had some experience and made observations in such matters, and yet he might have substantial knowledge of speed that would be available in the determination of whether or not the speed of a car was excessive under the circumstances of a particular case.

The language of the court, at page 327, in *Overton* v. *C. & E. I. R. R. Co.*, 181 Ill., 323, properly expresses this doctrine:

"While the court permitted certain witnesses to testify to the degree of speed at which the train that struck the plaintiff was running, the testimony of other witnesses for the plaintiff's intestate that the train was going very fast was stricken out. This was error. A witness might know and truthfully say that

a train was running fast or slow, and yet be unable to state the speed in miles per hour, and such inability would not render his testimony of no value or incompetent upon the question of speed.''

The testimony of the motorman is to the effect that the fender was in good working order on that occasion, and other evidence in the record would indicate that if he had dropped the fender promptly when he saw the danger to the boy his life might have been saved. The ringing of the gong, under the circumstances as he states them, would be much less effective than the dropping of the fender because, according to his story, the boy was running at such speed and was so near to the car that the gong could not avail, while the fender could doubtless have saved his life.

But it is useless to further discuss the testimony as to negligence, as it was properly submitted to the jury, and in our opinion their finding is supported by the evidence.

Plaintiff insists that there is no evidence in the record to support a judgment for more than nominal damages, and relies upon the case of *St. Ry.* v. *Altemeier,* 60 O. S., 10. That case holds that it is proper in the case of the wrongful death of a minor child to show the circumstances and health of its parents requiring that the child should aid them by his services not only during minority but thereafter. But we do not understand that it goes to the extent of holding that none but the very poor could recover damages for the wrongful death of a child or that proof of present earning power must appear. In this case the record shows that both parents were living and testified as witnesses before the jury, giving their ages and residence, and that the other beneficiaries of the suit were two brothers, one aged two years and four months and the other aged eleven months at the date of the filing of the petition, the latter of whom died before the trial. It is further shown that the deceased was a sturdy healthy boy of good disposition and habits. His years made it impossible to show that he then had an earning power, or just what such powers might in the future become, but the amount of the damage suffered was a proper question to be left to the consideration and determination of the jury within the limits fixed

by law. The amount of the verdict rendered in this case shows that such duty was properly exercised by the jury without passion or prejudice.

The language of the court at page 320 in *Ihl* v. *Forty-second St., etc., R. R. Co.*, 47 N. Y., 317, in our opinion properly states the law as to the determination of damages in such a case:

"The absence of proof of special pecuniary damage to the next of kin resulting from the death of the child would not have justified the court in non-suiting the plaintiff, or in directing the jury to find only nominal damages. It was within the province of the jury, who had before them the parents, their position in life, the occupation of the father, and the age and sex of the child, to form an estimate of the damages with reference to the pecuniary injury, present or prospective, resulting to the next of kin. Except in very rare instances, it would be impracticable to furnish direct evidence of any specific loss occasioned by the death of a child of such tender years; and to hold that, without such proof the plaintiff could not recover, would in effect, render the statute nugatory in most cases of this description. It can not be said as a matter of law, that there is no pecuniary damage in such a case, or that the expense of maintaining and educating the child would necessarily exceed any pecuniary advantage which the parents could have derived from his services had he lived. These calculations are for the jury, and any evidence on the subject beyond the age and sex of the child, the circumstances and condition in life of the parents, or other facts existing at the time of the death or trial, would necessarily be speculative and hypothetical, and would not aid the jury in arriving at a conclusion."

Plaintiff in error also claims that the court in its general charge committed error by its instructions in regard to the equipment of the car with a proper automatic fender. We think that the charge complained of was properly given by the court. As we have above stated, there was testimony in regard to the character and use of the fender, and the circumstances of the accident themselves seem to have indicated that if the body of the child had been struck by the apron, the basket should have been automatically dropped, or if the basket had been dropped by the motorman the life might have been saved. The language of the court in this part of the charge was guarded and

it was quite proper in view of the pleadings and the evidence that such a charge should be given.

A careful examination of the record fails to disclose any substantial error to the prejudice of the plaintiff in error, and the judgment is affirmed.

---

## ERROR NOT AFFIRMATIVELY SHOWN ON THE FACE OF THE RECORD.